Pursuant to § 6-5-642, Ala. Code 1975, Allstate Insurance Company, Allstate Indemnity Company, and Donald O. Hunter (hereinafter sometimes collectively referred to as "Allstate") appeal an order of the Jefferson County Circuit Court certifying two classes of homeowners' insurance policyholders to pursue class actions against Allstate for alleged premium overcharges. We reverse and remand.
In 1985 the plaintiffs Randy G. Ware and Donna L. Ware, then husband and wife, bought a house. In 1986 they negotiated with Allstate agent Donald O. Hunter for homeowners' insurance, which they purchased. Their coverages included "dwelling protection," in the face amount of $43,000 and "personal property protection" in the face amount of $30,000. In the course of underwriting the policy, Allstate estimated the market value of the home to be $43,000 and the insurable replacement cost, in case of total destruction, to be $41,480. *Page 741 
Thereafter, Allstate issued the policy to the Wares, and Mrs. Ware read it. The policy, in several places, stated that the dwelling protection did not cover land.[1] The most emphatic statement of this exclusion reads, "Property We Do Not Cover: 1. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land." This exclusion is the basis of the Wares' contention that Allstate overinsured them, and thus overcharged them, for the whole value of the real estate, including the land, even though only the improvements, excluding the land, were covered by the policy.
As the policy was renewed each year after its inception, the "dwelling protection" face amount was increased to account for inflation, and the premiums were correspondingly increased. The Wares contend that these increases perpetuated and exacerbated the original overcharges based on the original overinsurance. Mrs. Ware acknowledges that she may have received and read the declaration pages issued annually by Allstate stating the changes in premiums and face amounts of coverages, but she denies that she recalls any of the specifics of the declaration pages.
In 1992, without any prior notice to, or agreement with, the Wares, their homeowners' insurance was transferred from Allstate Insurance Company to Allstate Indemnity Company, which, the Wares contend, charged higher premiums than Allstate Insurance Company charged for the same coverages. This change in insurers was disclosed on the declaration page for the renewal policy issued that year. In 1997 the Wares cancelled the Allstate policy and replaced it with a less expensive policy issued by another insurer, not a party to this case.
Mr. Ware testified by deposition introduced in the class certification hearing conducted in due course by the trial court. A summary of the substance of pertinent portions of Mr. Ware's deposition testimony follows.
Hunter sold the Wares a "total replacement cost" insurance policy. Mr. Ware is not sure whether Hunter presented varying options for homeowners' insurance. Mr. Ware and Hunter estimated the replacement cost of the contents of the house. Mr. Ware then added the replacement cost of the contents to the mortgage amount to arrive at the amount of homeowners' insurance coverage he needed to purchase.
At the class certification hearing, Mrs. Ware testified both by deposition and in person. A summary of the substance of pertinent portions of Mrs. Ware's testimony follows.
Hunter did not ask about the value of the land on which the house was built. Hunter did not tell Mr. and Mrs. Ware that Allstate could not and would not insure the land in addition to the house. Had Hunter told Mrs. Ware that Allstate would not insure the land, she would have purchased different insurance. Because Mrs. Ware, she says, did not understand the Allstate policy when she received and read it, she telephoned Hunter and discussed the policy with him. On direct examination she testified that, while Hunter *Page 742 
did not make any affirmative misrepresentation about the policy, he did not tell her the estimated replacement cost of the house. On cross-examination, however, Mrs. Ware admitted that she cannot "recall today exactly what [she] said and exactly what he said," and that she cannot recall "the discussions that were had between [her] and Don Hunter."
In January 1998, in the Jefferson County Circuit Court, the Wares, in their individual capacities and as putative class representatives, sued Allstate for fraudulent misrepresentation, fraudulent suppression, breach of contract, wantonness, negligence, statutory violations, and unjust enrichment. In an amended complaint, the Wares admit that they "have no recollection of any affirmative misrepresentation on the part of Donald O. Hunter or Allstate." In the Wares' brief to us, they argue only their fraudulent suppression theory adequately for our consideration. The Wares' brief includes only a single seven-line paragraph about their breach-of-contract theory; this paragraph does not explain the theory, much less its suitability for class certification. Likewise, the only general theory both pleaded by the Wares and mentioned in the class certification order entered by the trial court is fraudulent suppression. Therefore, we will deem fraudulent suppression to be the only pleaded theory now before us on the issue of the propriety of class certification.
The gravamen of the Wares' fraudulent suppression claim is that, even though, as their policy expressly stated, their "dwelling protection" would cover only improvements excluding land, Allstate overinsured their home for an amount that included the land value and consequently charged them correspondingly excessive premiums. Oddly enough, an unpleaded theory class has also been certified and thus must be addressed here in due course.
Fraud must be pleaded with particularity. Rule 9(b), Ala.R.Civ.P., and Bethel v. Thorn, 757 So.2d 1154 (Ala. 1999). The only adequate specifications of fraudulently suppressed material facts pleaded by the Wares read:
 "[1.] At no time did Allstate or Donald O. Hunter disclose that land would have to be deducted or backed out for the determination of the value of a home. [2.] At no time did Allstate disclose that they were basing the premium on a mortgage amount, as opposed to rebuilding costs. [3.] At no time did Allstate disclose that should a claim be presented, Allstate would not pay rebuilding costs beyond the actual amount decided [sic] by the mortgage. In other words, Allstate was going to take the cheapest route to pay any kind of total claim." (Paragraph 59, Plaintiffs' First Amended Complaint.)
After discovery, the trial court conducted a hearing on the Wares' motion to certify themselves and others similarly situated as a class to pursue claims against Allstate for overcharging its insureds by the scheme of inflating the basis for calculating their premiums by including the values of the lands that would not be covered. During the certification hearing, the Wares orally asked the trial court to certify, in addition to the pleaded class, an unpleaded class of policyholders whose coverage originally had been placed with the defendant Allstate Insurance Company but then had been transferred to the more expensive defendant Allstate Indemnity Company.
After the hearing, the trial court entered an order certifying both classes. The order contains scant case-specific explanation of the class theories. Describing the fraudulent suppression theory, the order does say: "Replacement cost estimates may have been concealed from customers *Page 743 
while higher limits of coverage were issued that may have included land values" and "There are questions of law and fact common to the class raised by the allegations of the Complaint regarding the manner and practice of [Allstate] in determining and not disclosing replacement cost estimates and valuations of dwelling coverage on homes, in regard to the annual charges added to the initial potentially improper valuations, and in the inclusion of land values in the determination of the dwelling coverage limits." (Emphasis added.) Describing the unpleaded theory, the order says: "There are also questions of law and fact common to the class regarding the unilateral transfer of policies from Allstate Insurance Company to Allstate Indemnity Company which is a higher rated insurer which thereby charges higher premiums."
The order describes the two certified classes in these words:
 "[1.] All individuals who obtained homeowners insurance coverage through [Allstate] in the state of Alabama over the past twenty (20) years and who have received higher limits of coverage than their estimated replacement costs without being advised and thereafter showing their consent and acknowledgment that they desired such higher limits even though such limits might include land value and thereby, overinsurance. . . . [2.] [A]ll individuals whose coverage and protection for homeowner's coverage issued by Allstate Insurance Company in the state of Alabama over the past twenty (20) years were unilaterally transferred to Allstate Indemnity Company which was a higher rated company involving higher premiums for the same coverage."
We will name these two classes, respectively, "the land-value class" and "the transfer class."
Rule 23(a) and (b), Ala.R.Civ.P., establish the criteria for class certification:
 "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable,(2) there are questions of law or fact common to the class,(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 "(1) the prosecution of separate actions by or against individual members of the class would create a risk of
 "(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 "(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *Page 744 
 and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." (Emphasis added.)
On the one hand, the propriety of class certification does not depend on whether the putative class members will be able to prove their claims on the merits. In other words, a court deciding the issue of the propriety of class certification does not base the decision on the factual merits of the alleged class claims. Garcia v. Gloor, 618 F.2d 264 (5th Cir. 1980), cert. denied, 449 U.S. 1113 (1981), and Ex parte Government Employees Ins. Co., 729 So.2d 299 (Ala. 1999). On the other hand, the putative class representatives bear the burden of proving all of the Rule 23(a) criteria and at least one of the Rule 23(b) criteria. Rule 23; § 6-5-641(e), Ala. Code 1975; Ex parte Household Retail Servs., Inc., 744 So.2d 871, 876 (Ala. 1999); Ex parte Gold Kist, Inc.,646 So.2d 1339, 1341 (Ala. 1994). Prominent among the Rule 23(a) criteria are the third criterion, that the putative representatives' claims are typical of the putative class claims, and the fourth criterion, that the putative representatives are adequate to protect the interests of the putative class.
 "Without addressing the issue of class-action treatment of the issue of reliance, this Court has affirmed the certification of fraud class actions. See Warehouse Home Furnishing Distributors, Inc. v. Whitson, 709 So.2d 1144 (Ala. 1997); Ex parte Gold Kist, 646 So.2d 1339 (Ala. 1994); Harbor Ins. Co. v. Blackwelder, 554 So.2d 329 (Ala. 1989). Significantly, in Harbor Insurance Co., this Court held that `[w]here plaintiffs allege and prove a standard claim for fraud based on misrepresentations with a common thread, as is the case here, their cause is maintainable as a class action.' 554 So.2d at 335. But, in Butler v. Audio/Video Affiliates, Inc., 611 So.2d 330 (Ala. 1992), this Court affirmed the denial of certification in a fraud class action, where the denial was based, in part, on varying oral representations that created too many individual issues of reliance and damages. Butler, 611 So.2d at 332. The differences in these cases indicate that this Court has not thus far adopted a blanket prohibition against the certification of a fraud class action."
Ex parte Household Retail Servs., Inc., 744 So.2d at 881.
 "The elements of fraudulent suppression are: (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result of acting or of not acting. Booker v. United Am. Ins. Co., 700 So.2d 1333, 1339 (Ala. 1997); Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288, 1293
(Ala. 1993). Although the term `inducement' has often been used in the description of the fourth element of suppression, it is clear that a plaintiff's `justifiable reliance' (or, today, `reasonable reliance') is an essential element of a suppression claim. See *Page 745 
 Liberty Nat'l Life Ins. Co. v. Sherrill, 551 So.2d 272, 273 (Ala. 1989). . . ."
Ex parte Household Retail Servs., Inc., 744 So.2d at 879 (emphasis added).
In describing the claim of the first certified class, the land-value class, the order of the trial court identifies the "estimated replacement costs" as the material fact fraudulently suppressed by Allstate. The particular theory of fraudulent suppression apparent from the order but not fully articulated by the order is that Allstate included the land value in the face amount of "dwelling protection" coverage to be purchased by the class member, suppressed from the class member the material fact that Allstate had already estimated a lower replacement cost, and thereby defrauded the class member into buying the higher face amount at correspondingly higher premiums.
The state of the record before us leaves this theory inappropriate for this class certification for a most fundamental reason: this theory, identifying "estimated replacement costs" as the suppressed material fact, was not pleaded. The pleadings specified as suppressed material facts only (1) that the policy would not cover land, (2) that Allstate based the premiums on mortgage amount rather than on rebuilding costs, and (3) that "Allstate would not pay rebuilding costs beyond the actual amount decided [sic] by the mortgage."
A class cannot be certified on a fraud theory not specifically pleaded. The absence of specific pleading impedes the party opposing certification in that party's right and duty to assist the trial court in its duty, imposed by § 6-5-641(e), to perform "a rigorous analysis" of whether "the party or parties requesting class certification have proved its or their entitlement to class certification under Ala.R.Civ.P. 23." Indeed, even the Wares, in their brief to us, repudiate the interpretation of the fraudulent suppression claim adopted by the trial court. At pages 36 and 37, the Wares' brief states:
 "First, disclosing or not disclosing the estimated replacement cost in this case is not the legal wrong complained of. Instead, the problem is that Allstate failed to inform its customers that it could not and would not provide coverage for land despite the fact that it charged a premium based on land value!" (Emphasis added.)
Unless the parties and the trial court can accurately identify the fraud claim being proposed for class certification, the trial court is unlikely to succeed in conducting a correct rigorous analysis.
The trial court apparently rejected as futile or inappropriate for class certification the different fraudulent suppression theory the Wares did include in their pleadings and emphatically urge in their brief to us — the theory "that Allstate failed to inform its customers that it could not and would not provide coverage for land despite the fact that it charged a premium based on land value!" (Emphasis added but exclamation mark in original.) An insured who is competent in intelligence and background to understand insurance policy language is charged with knowledge of language in a policy received by that insured. Mitchell Nissan, Inc. v. Foster, 775 So.2d 138 (Ala. 2000); Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997); Brushwitz v. Ezell,757 So.2d 423, 430 (Ala. 2000). The Wares received the initial policy in 1986, Mrs. Ware read it, and the policy contained language unequivocally stating that it did not cover land. The record does not contain evidence that either of the Wares was incompetent in intelligence or background to understand the policy. Mrs. Ware's testimony that she did not understand the language is not *Page 746 
sufficient to relieve her of the legal effect of policy language so plain. Indeed, at page 59 of the Wares' brief to us, they state: "Here, there is nothing ambiguous about Allstate's promise that `We Do Not Cover: 1. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization [or] value of any such land.'"
The policy language plainly stating that the policy did not cover land disproves, as a matter of law, the Wares' theory that Allstate fraudulently suppressed from the Wares the material fact that the policy did not cover land. In other words, plain disclosure to a person competent in intelligence and background to understand the disclosure is the legal antithesis of suppression, by definition. Therefore, the Wares could not be suitable representatives for the only class policyholders who could recover on the theory of fraudulent suppression of noncoverage of land — the policyholders, if any, who were incompetent to understand the plain policy language. The Wares' claim would not be typical of such class members' claims and the Wares would not be adequate representatives of such class members as required by Rule 23(a)(3) and (4). For these reasons, we conclude that the certification order is not an obscurely worded effort to certify a class to pursue this theory that was pleaded by the Wares.
Finally, we will briefly discuss the second class, the transfer class, certified by the trial court. The Wares did not plead this class claim at all. Their request that the trial court certify this class and the consequent certification by the trial court transpired virtually as afterthoughts. The record does not establish any of the Rule 23 criteria for class certification. The Wares, in their brief, offer only this explanation:
 "Allstate unilaterally switched [the Wares'] policy from Allstate Insurance Company to Allstate Indemnity Company in 1992. Allstate Indemnity Company is a higher rated company according to its agent, Donald Hunter. (C. 1109) This change caused the [Wares] to pay an even higher premium. (C. 1111) The agent knew of no reasons to believe that the [Wares] had become a higher risk to cause this switch done by Allstate. (C. 1111) He did not request it — the company just did it. (C. 1110) There is no reason to believe this was a singular act against the [Wares] and the trial court certified a class on this type switching to raise premiums for no risk-related reason."
The Wares' argument that "[t]here is no reason to believe this was a singular act against the [Wares]," does not constitute evidence at all, much less the substantial evidence necessary to carry their burden under § 6-5-641(e) to establish the propriety of class certification. Likewise, the certification order by the trial court does not contain any analysis at all, much less the rigorous analysis of this claim and the propriety of this class required by § 6-5-641(e). Therefore, for the absence of pleading, proof, and rigorous analysis, the certification of the transfer class is erroneous.
The record does not support the certification of either class certified by the order of the trial court. Therefore, the order is reversed and the issue of class certification is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and SEE, BROWN, HARWOOD, and STUART, JJ., concur.
HOUSTON and WOODALL, JJ., concur in part and concur in the result in part. *Page 747 
LYONS, J., concurs in the result on the breach-of-contract theory and otherwise concurs.
[1] This opinion will discuss the "policy" terms as they are argued in the Wares' brief to us. The record contains a number of policies, apparently issued as the initial policy and various renewal policies, which contain varying terms. To the extent that the variations among the policies would affect the analysis of the Wares' theory or theories, the variations strengthen our conclusion that the analysis by the trial court is inadequate and the class certification is erroneous in this case.