The plaintiffs Harold Jones and Pam Jones, a married couple ("the Joneses"), appeal: (1) the Rule 12(b)(6), Ala.R.Civ.P., dismissal of their bad faith claim against the defendant Alfa Mutual Insurance Company ("Alfa"); (2) the entry of summary judgment for Alfa on other claims; and (3) the entry of summary judgments for the defendants Gary Bradshaw ("Bradshaw"); Ralph E. Jones ("Engineer Jones"); and Ralph E. Jones and Associates, Inc. ("Jones Associates"). We reverse the Rule 12(b)(6) dismissal of the Joneses' bad faith claim against Alfa; reverse in part and affirm in part the summary judgment for Alfa; affirm the summary judgments for Bradshaw, Engineer Jones, and Jones Associates; and remand the case for further proceedings on the viable claims consistent with this opinion.
On October 6, 1995, under an Alfa farmowner's insurance policy ("the policy"), the Joneses submitted to Alfa a claim for wind damage inflicted by Hurricane Opal on their home, garage, and barn earlier that month. On December 3, 1998, after Alfa had paid only parts of the claim, the Joneses sued Alfa for breach of contract; bad faith; negligent hiring and supervision of employees and agents; negligent or wanton inspection of the Joneses' damaged property; misrepresentation grounded on alleged misrepresentations by Bradshaw, an Alfa adjuster; misrepresentation grounded on alleged misrepresentations by Wendell Sanders ("Sanders"), an Alfa agent; suppression; tortious cancellation of the policy; and conspiracy. In the same case, the Joneses sued Bradshaw; Engineer Jones, an independent structural engineer engaged by Alfa; and Jones Associates, Engineer Jones's corporation, for negligently or wantonly inspecting the Joneses' damaged property.
The defendants moved for dismissal under Rule 12(b)(6), Ala.R.Civ.P. They contended that the applicable statutory periods of limitations had expired before the Joneses filed their lawsuit. The trial court considered only the pleadings and did not treat the Rule 12(b)(6) motion as a summary-judgment motion. The trial court dismissed only the claims for bad faith and negligent hiring and supervision. *Page 1192 
The Joneses do not appeal the dismissal of their claim for negligent hiring and supervision but do appeal the dismissal of their claim for bad faith.
Following the completion of discovery, the defendants moved for summary judgment on the remaining claims. The trial court entered summary judgments for all of the defendants on all of the remaining claims, and the Joneses appeal these summary judgments on all of these claims.
 Rule 12(b)(6) Dismissal of Claim for Bad Faith
The complaint alleges that Alfa paid part of the claim but does not allege that Alfa formally denied the rest of the claim. In pertinent part, the complaint alleges:
 "8. On or about October 4, 1995, Plaintiffs' home . . . suffered wind related damage associated with Hurricane Opal.
"9. Thereafter, the loss was reported by Plaintiffs to [Alfa].
 "10. On October 26, 1995, Gary Bradshaw, an adjuster for ALFA, made an inspection of Plaintiffs' residence to determine the cause of loss and the amount of damage.
 "11. ALFA then assigned the matter to [Engineer Jones]. On November 13, 1995, [Bradshaw and Engineer Jones] inspected the residence of Plaintiffs. Said inspection encompassed a visual observation of Plaintiffs' dwelling.
 "12. During the inspection of Plaintiffs' dwelling, [Bradshaw and Engineer Jones] observed roof damage, structural cracks and separations. . . .
 "13. On or about December 20, 1995, Plaintiffs' attorney, Bruce McLean, received from Bradshaw a copy of a report prepared by [Engineer Jones] summarizing his investigation of Plaintiff's property.
 "14. On or about December 29, 1995, [Bradshaw] forwarded to Plaintiffs' attorney a `Loss Estimate' along with ALFA's payment in the amount $3,280.00, representing the cost to replace Plaintiffs' roof less the applicable deductible under the policy.
 "15. Thereafter, Plaintiffs received periodic communications from various employees . . . of [Alfa] referencing the October 1995 claim, including telephone calls and contact letters and telephone calls. During this time, Plaintiffs were repeatedly assured by their local ALFA insurance agent, Wendell Sanders, not to worry and that their claim would eventually be paid.
 "16. On or about February 4, 1997, ALFA notified Plaintiffs of its intent not to renew their homeowners insurance policy effective March 9, 1997. . . .
". . . .
 "23. Defendant ALFA breached Plaintiffs' contract of insurance by refusal to properly investigate and/or pay a valid claim.
". . . .
 "26. Defendant ALFA's breach of contract amounted to a bad faith refusal to properly investigate and intentional refusal to properly pay a valid claim. No arguable or legitimate reason exists for Defendant's refusal to pay Plaintiff's claim. Defendant at all times had knowledge that no valid reason existed to [not] pay and/or to determine whether there existed a legitimate or arguable reason to refuse to pay Plaintiff's claim."
Considering only the allegations of the complaint, the trial court dismissed the bad faith claim. The trial court held that the bad faith claim was a "negligence based" claim that accrued when the wind damaged the Joneses' property on October 4, 1995, regardless of whether the Joneses could reasonably have discovered the bad faith on that date. Thus, the trial court held that the two-year statute of limitations for negligence claims, § 6-2-38(l), *Page 1193 
Ala. Code 1975, barred the bad faith claim and required a Rule 12(b)(6) dismissal.
"[A] Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." Nance v. Matthews,622 So.2d 297, 299 (Ala. 1993) (citations omitted). "Next, the standard for granting a motion to dismiss based upon the expiration of the statute of limitations is whether the existence of the affirmative defense appears clearly on the face of the pleading." Braggs v. Jim Skinner Ford,Inc., 396 So.2d 1055, 1058 (Ala. 1981) (citations omitted).
Bad faith is an intentional tort, Shelter Mutual Insurance Co. v.Barton, 822 So.2d 1149, 1154 (Ala. 2001), and a species of fraud. Dumasv. Southern Guaranty Ins. Co., 408 So.2d 86, 89 (Ala. 1981).
 "The cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of facts which would reasonably lead the insured to a discovery of the bad faith refusal. The accrual of the tort of bad faith is a question of fact to be determined by the circumstances of each case."
Safeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1222 (Ala. 1983) (citation omitted). "The statute of limitations for bad faith claims arising on or after January 9, 1985, is two years." Alfa Mut. Ins. Co.v. Smith, 540 So.2d 691, 692 (Ala. 1988) (citations omitted).
In the present case, the face of the Joneses' complaint does not show that the period of the statute of limitations applicable to their bad faith claim had expired before they filed suit. The date when the bad faith claim accrued cannot be determined from the allegations of the complaint because it alleges neither facts establishing a date when Alfa denied any part of the Joneses' claim nor facts establishing a date when the Joneses possessed "knowledge of facts which would reasonably [have led the Joneses] to a discovery of the bad faith refusal." Safeco Ins., 435 So.2d at 1222. To the contrary, the complaint alleges that the Joneses "were repeatedly assured by their local ALFA insurance agent, Wendell Sanders, not to worry and that their claim would eventually be paid." Therefore, we reverse the Rule 12(b)(6) dismissal of the Joneses' claim for bad faith and remand this case for further proceedings on this claim consistent with this opinion.
 Summary Judgment on Breach-of-Contract Claim
"We review a summary judgment de novo." Potter v. First Real EstateCo., 844 So.2d 540, 545 (Ala. 2002) (citation omitted).
 "Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party; will accord the nonmoving party all reasonable favorable inferences from the evidence; and will resolve all reasonable doubts against the moving party."
Ex parte Rizk, 791 So.2d 911, 912 (Ala. 2000) (citations omitted).
 "'[W]hen the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to show "substantial evidence" in support of his position.' Substantial evidence is defined as `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the *Page 1194 
existence of the fact sought to be proved.'"
Boackle v. Bedwell Constr. Co., 770 So.2d 1076, 1079 (Ala. 2000) (citations omitted). We will state the facts in accordance with these principles.
Sanders had inspected the Joneses' property in the summer of 1995, two to four months before Hurricane Opal, as part of a re-write application to increase the coverage on the Joneses' property. On that occasion, Sanders had not seen any sheetrock damage or brick damage.
The policy insured the Joneses' house, garage, personal property, and barn for wind damage. However, the policy excluded loss resulting from "earth movement" and "settling . . . of foundation, walls, floors, roofs, or ceilings." The policy covered debris removal. In the insurance claim the Joneses submitted to Alfa, they claimed that wind had: (1) damaged the roof of their house; (2) cracked sheetrock inside their house ("sheetrock damage"); (3) cracked and displaced bricks in the veneer of the garage ("brick damage"); (4) damaged their barn; and (5) created debris that had to be removed.
Bradshaw, on behalf of Alfa, inspected the damaged property on October 26, 1995. Bradshaw agreed that wind had damaged the barn and the roof of the Joneses' house. However, he wanted an engineer to determine whether wind had caused the sheetrock damage and brick damage. For that purpose, he brought Engineer Jones to the Joneses' property on November 13, 1995. Engineer Jones opined that settlement of the foundation of the house rather than wind had caused the sheetrock damage and brick damage.
Bradshaw estimated the cost of replacing the roof at $3,280 and the cost to repair the damage to the barn at less than the $500 deductible. On December 29, 1995, Bradshaw mailed to the Joneses' lawyer a draft in the amount of $3,280 as payment for the roof damage. The letter stated:
 "Enclosed is an estimate for the replacement of the insured's shingle roof and a draft representing payment less the deductible for that roof.
 "I also understand that you are in possession of a copy of the engineer's report which indicates the shifting and settlement of the insured house was not related to the hurricane winds. Should you have any questions concerning that report or any aspect of the insured's claim or policy please feel free to give me a call. Also if there is any other damage that the insured has found as a result of the hurricane that we have not already addressed please have him to submit itemized estimates for those to be considered. I thank you for your help and cooperation and look forward to hearing from you."
In March of 1996, the Joneses delivered to Sanders at the Alfa office a bill in the amount of $3,627.11 from roofer Floyd Jerkins for replacement of the roof of the Joneses' house. Alfa took no action in response to the delivery of the Jerkins bill. About December 1996, the Joneses delivered to Sanders an estimate of $4,320 by contractor Howard Lee for repair of the barn. On January 20, 1997, Bradshaw prepared a new estimate of the cost to repair the barn. He reduced the Howard Lee estimate from $4,320 to $850, subtracted the $500 deductible, and allowed an amount due of $350. Bradshaw then sent the Joneses a $350 draft, but without any apparent explanation of what aspect of the Joneses' claim the draft was to pay. Bradshaw did not inform the Joneses that Alfa would not pay any further amounts on their claim. Thereafter, an Alfa representative telephoned the Joneses to inquire whether they were satisfied with the way *Page 1195 
Alfa had handled their claim. The Joneses complained to this representative that they were very dissatisfied because they could not repair their severely damaged house. As a result of this telephone conversation, Hilton Godwin, an Alfa claims manager, telephoned the Joneses. However, when Harold Jones told Godwin that the Joneses were represented by a lawyer, Godwin told Harold Jones that Godwin could not discuss the Joneses' claim.
The Joneses submitted the deposition of their expert witness, David Carlysle ("Carlysle"), a registered engineer and licensed home inspector, in opposition to the summary-judgment motion. Alfa, contending that Carlysle lacked sufficient training or experience to express his opinions and that Carlysle had based his opinions on hearsay, moved to strike Carlysle's deposition and report. While the trial court noted that Carlysle had relied on hearsay for some of his opinions, it held that Carlysle's training and experience as an engineer were sufficient for him to testify as an expert. Carlysle based his opinions regarding the cause of the brick damage entirely on his expertise and his own observations of the damage to the brick and the foundation of the house and garage. He opined that wind had caused the brick damage and that no evidence supported Engineer Jones's opinion that settlement of the foundation had caused the brick damage.
Because the period of the statute of limitations for a contract action is six years, § 6-2-34(9), Ala. Code 1975, no statute-of-limitations defense is at issue. "To establish a breach-of-contract claim, a plaintiff must show '"(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages."'" Ex parte Coleman, [Ms. 1010644, March 14, 2003]861 So.2d 1080, 1085 (Ala. 2003) (citation omitted).
Alfa moved for summary judgment on the breach-of-contract claim only on the grounds that the Joneses could not establish that they had submitted to Alfa any substantiation of any covered but unpaid wind damage or that Alfa had not performed the contract. Alfa relied on the evidence that it had paid $3,280 for the roof damage, that it had paid $350 for the barn damage, and that, according to Engineer Jones, a peril not covered by the policy had caused the sheetrock damage and brick damage.
However, the Jerkins bill for replacement of the roof of the Joneses' house constitutes substantial evidence that Alfa owed the Joneses an additional $347.11 ($3,627.11 minus the $3,280.00 Alfa paid equals $347.11) for the damage to the roof. The Lee estimate for repairing the barn constitutes substantial evidence that Alfa owed the Joneses an additional $3,470 ($4,320 minus the $500 deductible and the $350 Alfa paid equals $3,470) for the damage to the barn. Sanders's testimony that he had not seen any sheetrock damage or brick damage when he inspected the Joneses' property in the summer of 1995 before Hurricane Opal constitutes substantial evidence that a sudden occurrence such as wind caused the damage rather than a long-term occurrence such as the settling of the foundation. Carlysle's opinion testimony likewise constitutes substantial evidence that a covered peril caused the brick damage. Finally, the Joneses presented evidence that wind caused debris that they had to remove, and Alfa presented no policy defense to the Joneses' claim for debris removal. All of this evidence creates genuine issues of material fact whether the Joneses had not performed the contract in submitting their claim and whether Alfa had performed the contract by paying the claim in part. Thus, this evidence precludes summary judgment on the Joneses' breach-of-contract *Page 1196 
claim. Therefore, we reverse the summary judgment for Alfa on the Joneses' breach-of-contract claim and remand this case for further proceedings on this claim consistent with this opinion.
 Conclusion
The Joneses' claims for negligent or wanton inspection, suppression, misrepresentation, and conspiracy were subject to summary judgment. One or more essential elements of each of those claims lacked supporting substantial evidence, and the defendants' motions for summary judgment aptly challenged these evidentiary failures. See Ex parte General MotorsCorp., 769 So.2d 903 (Ala. 1999); Rector v. Better Houses, Inc.,820 So.2d 75 (Ala. 2001); Kennedy v. Western Sizzlin Corp., [Ms. 1010804, March 7, 2003] 857 So.2d 71, 78 (Ala. 2003). Thus, the summary judgments on those claims are due to be affirmed, even though our reason for affirming differs from the rationale of the trial court in granting.See Smith v. Equifax Servs., 537 So.2d 463 (Ala. 1988). Accordingly, we affirm the summary judgment for Alfa on those claims and affirm the summary judgments for Bradshaw, Engineer Jones, and Jones Associates on the claim for negligent or wanton inspection, the only claim alleged against them. For the reasons discussed above, we reverse the Rule 12(b)(6) dismissal of the claim against Alfa for bad faith and the summary judgment for Alfa on the claim for breach of contract and remand the case for further proceedings on these claims consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.