Rel: February 27, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0478

————————————————

**Ex parte Alfa Mutual Insurance Company and Jeffery Dimoff**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Kinsman Investments, LLC**

**v.**

**Alfa Mutual Insurance Company and Jeffery Dimoff)**

**(Mobile Circuit Court: CV-22-900061)**

WISE, Justice.

Alfa Mutual Insurance Company ("Alfa") and Jeffery Dimoff petition this Court for a writ of mandamus directing the Mobile Circuit Court to set aside its May 22, 2025, order denying their motions for a

summary judgment and to enter a summary judgment in their favor.  We grant the petition and issue the writ.

<u>Facts and Procedural History</u>

Kinsman Investments, LLC ("Kinsman"), owned an apartment complex in Mobile.  In August 2005, buildings in the complex suffered damage from Hurricane Katrina.  The complex was insured by Alfa. Dimoff, an insurance adjuster for Alfa, worked with Kinsman's owner to pay for replacement of the roofs and siding on the damaged buildings in the complex.  In 2022, Kinsman sued Alfa and Dimoff in the trial court, alleging that Alfa had failed to pay sums due under the insurance policy and that Alfa and Dimoff had misrepresented and suppressed Alfa's duty to do so.

Kinsman's complaint alleged:

"[Alfa] convinced [Kinsman] to have its vendor/contractor place a 10-year roof on the complex and was advised by Defendant [Alfa] and Defendant Dimoff that 25-year roofs of the type (torch roofs) [Kinsman] had on the property were no longer available and dangerous to install because of the potential for fire."

According to the complaint, Kinsman's owner was unaware that Kinsman's policy with Alfa included a provision for Alfa to either replace damaged property with materials of like kind and quality or to pay

2

Kinsman for the difference in value if materials of a lesser kind or quality were used. The complaint alleged that Kinsman's owner instead "relied on the adjuster to interpret the policy in good faith."

The complaint similarly alleged that Alfa and Dimoff had arranged for replacement of the siding with less expensive material. It is unclear from the complaint whether Kinsman's owner was aware of the difference in siding materials at the time the repairs were made.[1] Kinsman alleged that the difference in roofing materials and siding diminished the value of the complex.

Kinsman asserted three claims against Alfa and Dimoff: fraud, fraudulent suppression, and "bad faith/breach of contract." As to the fraud claim, the fact alleged to have been misrepresented is that "the apartment complex would be covered by the [Alfa] insurance policy and its terms." Kinsman asserted its owner was unaware of the "like, kind and quality" requirement and of Alfa's alleged duty to pay the difference in values of the existing materials and the new materials. Kinsman alleged that its owner "first became aware in 2021 the defendants should

---

[1]However, it is undisputed that, in 2005, Kinsman's owner knew that a different type of siding was being installed.

have revealed they owe [Kinsman] a sum of money representing the difference in value."

Based on the same allegations, Kinsman asserted that Alfa and Dimoff had fraudulently suppressed the existence of the like-kind-and-quality provision and Alfa's duty to pay for the difference in value of the materials. Finally, Kinsman alleged that Alfa and Dimoff "acted in bad faith and breached the contract of insurance in adjusting the insurance policy by denying to Kinsman payments due under the policy." As to each claim, Kinsman sought compensatory and punitive damages.

Kinsman supplemented its complaint to add an affidavit from Daniel Engel, the contractor who completed the repairs on the complex. His affidavit explained the difference in roofing materials. It then stated that, at the time the repairs were made, Engel had discussed the difference with Dimoff and had expressed his belief that Alfa had an obligation to pay Kinsman for the difference in value. Engel stated that he never spoke with Kinsman's owner about the matter. Engel stated he was contacted by Kinsman's owner in 2021 to do work on the roof "as it began to fail." At that time, he asked whether Kinsman had been paid under the terms of the like-kind-and-quality provision and was told that

4

it had not been and that Kinsman's owner had been unaware of the provision.

The parties conducted discovery, and, in February 2025, Alfa moved for a summary judgment. Alfa argued, in part, that each of Kinsman's claims was barred by a two-year statute of limitations. Alfa asserted that the claims had accrued at the time the repairs were made to the complex in 2005 and 2006, more than 15 years before Kinsman filed suit in 2021. Alfa based its argument on the fact that Kinsman's owner had been made aware of the difference in materials when the repairs were completed in 2006, as the complaint alleged. Further, Alfa showed by undisputed evidence that Kinsman had a copy of the policy even before Hurricane Katrina and thus was on notice of its coverage provisions. Thus, Alfa asserted, the facts of coverage allegedly misrepresented or suppressed were known to Kinsman and, thus, it had an immediate right to assert its claims in 2006.

Dimoff also moved for a summary judgment. He asserted the same arguments raised by Alfa. Kinsman responded; however, a copy of that response does not appear in the materials before us. Alfa and Dimoff

each replied.  On May 22, 2025, the trial court entered an order denying the motions for a summary judgment.

Alfa and Dimoff filed a petition for permission to appeal pursuant to Rule 5, Ala. R. App. P., which this Court denied.  Simultaneously, Alfa and Dimoff filed their mandamus petition, seeking a writ directing the trial court to vacate its May 22, 2025, order denying their motions for a summary judgment and to enter a summary judgment in their favor.

Standard of Review

"A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: '"(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."' Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001))."

Ex parte Hodge, 153 So. 3d 734, 738-39 (Ala. 2014).

It is well settled that a petition for a writ of mandamus ordinarily is not an appropriate means of seeking relief from the denial of a motion for a summary judgment.  This Court explained in Hodge:

"Generally, an order denying a motion for a summary judgment is not appealable, except by permission pursuant to Rule 5, Ala. R. App. P.  F.A. Dobbs & Sons, Inc. v. Northcutt, 819 So. 2d 607, 609 (Ala. 2001).  This Court has stated:

6

"'The general rule is that "'a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.'" Ex parte Empire Fire & Marine Ins. Co., 720 So. 2d 893, 894 (Ala. 1998) (quoting Ex parte Central Bank of the South, 675 So. 2d 403 (Ala. 1996)).  In all but the most extraordinary cases, an appeal is an adequate remedy; however, there are exceptions -- for example, when the trial court denies a motion for a summary judgment that is based on an argument that governmental immunity bars the plaintiff's claim.  See, e.g., Ex parte Butts, 775 So. 2d 173, 177-78 (Ala. 2000).  In such a case, the defendant may seek pretrial appellate review by petitioning for permission to appeal an interlocutory order in accordance with Rule 5, Ala. R. App. P., or by petitioning for a writ of mandamus. See id.

"'In Ex parte Southland Bank, 514 So. 2d 954, 955 (Ala. 1987), this Court stated that "[t]he fact that a statute of limitations defense is applicable is not a proper basis for issuing a writ of mandamus, due to the availability of a remedy by appeal." 514 So. 2d at 955.  Subject to a narrow exception, that statement remains true.  In a narrow class of cases involving fictitious parties and the relation-back doctrine, this Court has reviewed the merits of a trial court's denial of a summary-judgment motion in which a defendant argued that the plaintiff's claim was barred by the applicable statute of limitations.'

"Ex parte Jackson, 780 So. 2d 681, 684 (Ala. 2000)."

153 So. 3d at 745-46.  However, in Hodge, this Court narrowly extended the circumstances in which this Court will review a trial court's denial of

7

a summary-judgment motion on statute-of-limitations grounds to include those cases in which the defendants "have demonstrated, from the face of the complaint, a clear legal right to relief and the absence of another adequate remedy." Id. at 749.

## Discussion

### I. Clear Legal Right to Relief

First, we must determine whether Alfa and Dimoff have demonstrated, based on the face of the complaint, that they have a clear legal right to the relief sought. Alfa and Dimoff argue that Kinsman's fraud, fraudulent-suppression, and bad-faith/breach-of-contract claims are barred by the applicable statutes of limitations.

### A. Fraud

The first count of Kinsman's complaint stated a claim of fraud. Kinsman asserted that Alfa, through Dimoff, fraudulently represented "that the apartment complex would be covered by the [Alfa] insurance policy and its terms, and [Kinsman] relied on their representations. [Kinsman] was unaware of the 'like, kind and quality' requirement of the policy and the duty of the insurance company to pay the difference in values." Kinsman further alleged that Alfa owed Kinsman "a sum of

8

money representing the difference between the value of 10-year roof and a 25-year roof; and the difference in money between the value of the siding that was in place at the time of Hurricane Katrina, and the one actually replaced which was not of 'like kind and quality' called for by the policy" and that the value of the apartment complex was diminished. Thus, the claim is based on allegations that Alfa and Dimoff made misrepresentations in 2005 and 2006 about the contents of the policy and the scope of coverage and that Kinsman suffered damage at that time. Kinsman filed suit in 2022, approximately 15 years later.

The two-year statute of limitations of § 6-2-38(l), Ala. Code 1975, applies to Kinsman's fraud claim. Under § 6-2-3, Ala. Code 1975, "the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud." This Court has explained:

> "[Section] 6-2-3 does not 'save' a plaintiff's fraud claim so that the statutory limitations period does not begin to run until that plaintiff has some sort of actual knowledge of fraud. Instead, under Foremost[ Insurance Co. v. Parham, 693 So. 2d 409 (Ala. 1997)], the limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.' Willcutt v. Union Oil Co., 432 So. 2d 1217, 1219 (Ala. 1983)

9

(quoting <u>Johnson v. Shenandoah Life Ins. Co.</u>, 291 Ala. 389, 397, 281 So. 2d 636 (1973))."

<u>Auto-Owners Ins. Co. v. Abston</u>, 822 So. 2d 1187, 1195 (Ala. 2001).

"An insured who is competent in intelligence and background to understand insurance policy language is charged with knowledge of language in a policy received by that insured. <u>Mitchell Nissan, Inc. v. Foster</u>, 775 So. 2d 138 (Ala. 2000); <u>Foremost Ins. Co. v. Parham</u>, 693 So. 2d 409, 421 (Ala. 1997); <u>Brushwitz v. Ezell</u>, 757 So. 2d 423, 430 (Ala. 2000)."

<u>Allstate Ins. Co. v. Ware</u>, 824 So. 2d 739, 745 (Ala. 2002).

The complaint did not include any allegations that Kinsman did not receive a copy of its policy during the relevant periods or that Alfa had suppressed the contents of the policy. Rather, Kinsman merely asserted that it had "relied on the adjuster to interpret the policy in good faith." In fact, it is undisputed that Kinsman had a copy of its Alfa policy in 2005 and 2006. Additionally, it is clear that Kinsman would have had a duty to obtain and read its policy when making a claim under its terms. <u>See</u> <u>Alfa Life Ins. Corp. v. Reese</u>, 185 So. 3d 1091, 1102-04 (Ala. 2015).

Further, it is clear from the complaint that Kinsman was made aware of the difference in the roofing materials at the time the repairs were made. Knowledge of the difference in materials should have provoked inquiry about the scope of coverage, which would have led to

10

the discovery of the like-kind-and-quality provision and the alleged misrepresentations on which Kinsman's fraud claim rests. See, e.g. Sexton v. Liberty Nat'l Life Ins. Co., 405 So. 2d 18, 21-22 (Ala. 1981) (holding that alleged underpayments under policy should have provoked inquiry and investigation, which would have led to discovery that payments were not as allegedly promised).

Because Kinsman was privy to facts that, if it had inquired further, would have led to the discovery of the scope of coverage on which Kinsman bases its allegations of fraud, it is clear from the complaint that Kinsman's fraud claim accrued in 2006. Kinsman did not file suit until 2022, undeniably outside the two-year statute of limitations of § 6-2-38(l). Therefore, it is clear from the face of the complaint that Kinsman's fraud claim is barred by the applicable statute of limitations.

## B.    Fraudulent Suppression

The second count of Kinsman's complaint stated a claim of fraudulent suppression. This claim rests on allegations identical to those asserted in Kinsman's fraud claim. In its suppression claim, Kinsman alleged:   "[Alfa and Dimoff] fraudulently represented … that the apartment complex would be covered by the [Alfa] insurance policy and

11

its terms, and [Kinsman] relied upon their representations. [Kinsman] was unaware of the 'like, kind and quality' requirement of the policy." It further alleged that Alfa owed Kinsman "a sum of money representing the difference between the value of 10-year roof and a 25-year roof; and the difference in money between the value of the siding that was in place at the time of Hurricane Katrina, and the one actually replaced which was not of 'like kind and quality' called for by the policy." Finally, Kinsman alleged that Alfa and Dimoff "fraudulently suppressed these facts from [Kinsman] even after being advised by the contractor they should pay [Kinsman] the difference."

Like Kinsman's fraud claim, its suppression claim is subject to the two-year limitations period of § 6-2-38(l). See Liberty Nat'l Life Ins. Co. v. Ingram, 887 So. 2d 222, 227 (Ala. 2004). The limitations period for this claim began to run when Kinsman "was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'" Auto-Owners, 822 So. 2d at 1195 (citation omitted); see also Davant v. United Land Corp., 896 So. 2d 475, 490-91 (Ala. 2004).

As we noted previously, Kinsman was charged with knowledge of the terms of its insurance policy. See Allstate, supra. Additionally, it is clear from the complaint that Kinsman had knowledge of the difference in the roofing materials in 2006 at the latest. The difference in materials is a fact that would have provoked a reasonable person to inquire about the scope of coverage and the specific provisions in the policy at that time. However, Kinsman did not bring suit until 2022, years after the expiration of the two-year limitations period of § 6-2-38(l). Thus, it is clear from the face of the complaint that Kinsman's fraudulent-suppression claim is also time-barred.

## C.    Bad Faith/Breach of Contract

In its bad-faith/breach-of-contract count, Kinsman alleged that Alfa and Dimoff "acted in bad faith and breached the contract of insurance in adjusting the insurance policy by denying to Kinsman payments due under the policy." Kinsman's bad-faith claim is subject to the two-year limitations period of § 6-2-38(l). See Alfa Mut. Ins. Co. v. Smith, 540 So. 2d 691, 692-93 (Ala. 1988)); see also Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1193 (Ala. 2003). Kinsman's breach-of-contract claim is subject to the six-year limitations period set forth in § 6-2-34(9), Ala. Code 1975.

"A cause of action for bad faith refusal to pay insurance benefits accrues for statute of limitations purposes 'when the party seeking to bring the action knew of facts which would put a reasonable mind on notice of the <u>possible existence</u> of [bad faith].' <u>Farmers & Merchants Bank v. Home Ins. Co.</u>, 514 So. 2d 825 (Ala. 1987)."

<u>Smith</u>, 540 So. 2d at 692-93. "Additionally, '[i]t is well settled that a cause of action for breach of contract accrues when the contract is breached.' <u>Wheeler v. George</u>, 39 So. 3d 1061, 1084 (Ala. 2009)." <u>Ex parte National Tr. Ins. Co.</u>, 405 So. 3d 208, 220 (Ala. 2024).

As explained above, Kinsman was charged with knowledge of the terms of its insurance policy, which included the like-kind-and-quality provision. <u>See</u> <u>Allstate</u>, supra. Moreover, it is clear from the complaint that Kinsman knew of the difference in the materials used in the roof, a fact that would have put a reasonable person on notice of questions about the scope of coverage and thus of the possible existence of its claim. Kinsman had this knowledge in 2006 at the latest, yet it failed to bring suit until 2022, years after the expiration of the two-year limitations period. Therefore, it is clear from the face of the complaint that Kinsman's bad-faith claim is barred by the applicable statute of limitations.

14

Additionally, Kinsman's breach-of-contract claim would have accrued at the time Alfa allegedly failed to pay Kinsman for the difference in value between the roofing materials and siding used to repair the complex and the roofing materials and siding that existed at the time of the hurricane, which was 2006 at the latest. Accordingly, it is clear from the face of the complaint that Kinsman's breach-of-contract claim is also barred by the applicable statute of limitations.

Based on the foregoing, it is clear from the face of the complaint that Kinsman's claims are barred by the applicable statutes of limitations. Therefore, the trial court erred when it denied their motions for a summary judgment. Accordingly, Alfa and Dimoff have established, based on the face of the complaint, that they have a clear legal right to the relief requested.

## II. Lack of Another Adequate Remedy

Next, we must determine whether Alfa and Dimoff have another adequate remedy. In Hodge, this Court discussed the issue whether, in a similar situation, a petitioner had another adequate remedy:

> "Once the trial court denied their motions for a summary judgment, the defendants were left with seeking a permissive appeal pursuant to Rule 5, Ala. R. App. P., petitioning this Court for a writ of mandamus, or possibly

taking an appeal from a final verdict or judgment. Rule 5(a), Ala. R. App. P., provides:

> "'A party may request permission to appeal from an interlocutory order in civil actions under limited circumstances. Appeals of interlocutory orders are limited to those civil cases that are within the original appellate jurisdiction of the Supreme Court. A petition to appeal from an interlocutory order must contain a certification by the trial judge that, in the judge's opinion, the interlocutory order involves a controlling question of law as to which there is substantial ground for difference of opinion, that an immediate appeal from the order would materially advance the ultimate termination of the litigation, and that the appeal would avoid protracted and expensive litigation. The trial judge must include in the certification a statement of the controlling question of law.'

"Justice Murdock aptly explained, in his special concurrence in Ex parte Alamo Title Co., 128 So. 3d 700, 714-15 (Ala. 2013), the inadequacy of a Rule 5 permissive appeal and/or the taking of an appeal from a final verdict or judgment, as alternative remedies where a petitioner has established a clear legal right to the relief sought. As to Rule 5, Justice Murdock stated:

> "'[T]he standard referenced for mandamus relief -- a "clear legal right" to the relief -- is the standard for actually "winning" relief in the appellate court. The standard referenced for Rule 5 -- that there be a controlling question of law as to which there is "substantial ground for difference of opinion" -- is merely the standard that must be met to get one's grievance before the appellate court in the first place.

"'....

"'More fundamentally, Rule 5 is indeed limited to rulings involving "questions of law" and, specifically, unsettled questions for which there is a ground for substantial difference of opinion. Such uncertainty simply is not characteristic of most disputes over subject-matter jurisdiction, in personam jurisdiction, immunity, venue, discovery, and fictitious-party practice in the context of a statute-of-limitations concern, all of which are subjects as to which legal principles are well established and as to which we repeatedly have held that mandamus relief may be appropriate. Instead, the types of disputes listed above typically turn, as does the dispute in the present case, on whether the trial court has exceeded its discretion in deciding whether the evidence presented justifies factual findings sufficient to meet a well settled legal standard.

"'Finally, but perhaps most importantly, there is no right to a Rule 5 certification. Granting "permission" to appeal an interlocutory order is within the wide discretion of the trial judge, and a question exists as to whether appellate relief would even be available on the ground that the trial court exceeded some measure of discretion. Even if the trial court gives its consent, this Court must agree to accept the question certified. See Rule 5(c), Ala. R. App. P. I fail to see how that to which a party has no right can be deemed a true "remedy."'

"Ex parte Alamo Title Co., 128 So. 3d at 714-15 (Murdock, J., concurring specially) (footnote omitted; emphasis added).

17

"As for the notion that further litigation in the trial court and the eventual taking of an appeal from a final judgment provides an adequate remedy, Justice Murdock stated:

"'In Ex parte L.S.B., 800 So. 2d 574 (Ala. 2001), this Court held that the standard for whether some remedy other than mandamus is "adequate" is not whether there simply is some other remedy, e.g., an eventual appeal, but whether that other remedy is "adequate to prevent undue injury." 800 So. 2d at 578. As a result, the Court noted that mandamus would lie to address certain discovery disputes, to enforce compliance with the court's mandate, to enforce a right to a jury trial, and to vacate certain interlocutory rulings in divorce cases. Id. at 578. All of these -- indeed, virtually any ground for mandamus relief -- could eventually be raised in an appeal from a final judgment. Yet we do not consider this to be an "adequate" remedy in many cases.

"'Long before L.S.B. was decided, this Court discussed the requirement that the alternative remedy be adequate to avoid the particular harm at issue:

"'"[T]he appeal must be an adequate remedy[;] it must be capable of protecting parties from the injury immediately resulting from the error of the court. While the error in refusing a dismissal for want of security for costs, may be available on error for the reversal of a judgment, obviously, an appeal is not an adequate remedy. The citizen is compelled into litigation with a non-resident, pending the further continuance of the suit and the appeal,

18

without indemnity against the costs, the evil the statute intends to avoid. Hence, it has been the uniform course of decision that mandamus is an appropriate remedy to compel the dismissal of such suit."

"'First Nat'l Bank of Anniston v. Cheney, 120 Ala. 117, 121-22, 23 So. 733, 734 (1898) (citations omitted).

"'The view expressed in Cheney is consistent with the view expressed elsewhere:

"'"It is the mere inadequacy and not the mere absence of all other legal remedies, and the danger of the failure of justice without it, that must usually determine the propriety of the writ. Where none but specific relief will do justice, specific relief should be granted if practicable, and when a right is single and specific it usually is practicable.

"'"To supersede the remedy by mandamus a party must not only have a specific, adequate, legal remedy, but one competent to afford relief upon the very subject of his application."

"'2 W.F. Bailey, A Treatise on the Law of Habeas Corpus and Special Remedies 825-26 (1913) (emphasis added).

"'In the present case, the position expressed in Part II.B of the dissent is that mandamus does not lie to remedy the trial court's failure to dismiss

19

the claims against Alamo for lack of <u>in personam</u> jurisdiction because Alamo has available to it the following alternative and allegedly adequate remedy: "'continu[ing] to challenge personal jurisdiction in ... answers to the complaint and by motions for summary judgment or at trial'" and, if unsuccessful in all of these, pursuing an appeal. 128 So. 3d at 713 (quoting <u>Ex parte United Insurance Cos.</u>, 936 So. 2d 1049, 1056 (Ala. 2006)). Although the dissent cites <u>Ex parte United Insurance Cos.</u> for the proposition that the petitioner can in fact continue to challenge personal jurisdiction in these ways, that case does not stand for the proposition that the right to do so in a case challenging <u>in personam</u> jurisdiction is an "adequate remedy" that justifies the refusal of the appellate court to hear a mandamus petition.

"'Indeed, the very reason for the limited exceptions we have carved out to the general rule that interlocutory denials of motions to dismiss and motions for a summary judgment cannot be reviewed by way of a petition for a writ of mandamus is that there are certain defenses (e.g., immunity, subject-matter jurisdiction, <u>in personam</u> jurisdiction, venue, and some statute-of-limitations defenses) that are of such a nature that a party simply ought not to be put to the expense and effort of litigation. The cases recognizing the availability of mandamus relief as to such matters are countless. Further, we have not been asked to overrule any of these cases.

"'Nor do I believe we should consider overruling this precedent, even in a case in which we might be asked to do so. It simply is not an "adequate remedy" -- i.e., as stated in <u>Ex parte L.S.B.</u>, a remedy "adequate to prevent undue

20

injury" or, as Bailey states, a remedy "competent to afford relief upon the very subject of his application" -- to say to a party that has no meaningful contact with the State of Alabama or who, under our precedents, is protected by sovereign immunity from even going through litigation much less from liability that he or she must simply "further litigate" the case and one day take an appeal. In a given case, such an approach could subject a defendant to years of litigation, hundreds of thousands of dollars in attorney fees and other litigation expenses, the time, effort, and expense of traveling to Alabama from elsewhere in the country for depositions and hearings (in the case of the party with no contact with the State), and a cloud of uncertainty and worry hanging over the party's business or personal affairs all this time. I cannot agree that further litigation and an eventual appeal serves as an "adequate remedy" that meets these "subjects."'

"Ex parte Alamo Title Co., 128 So. 3d at 715-17 (Murdock, J., concurring specially)(footnote omitted).

"Based on the particular circumstances of this case, we agree with Justice Murdock's assessment of a Rule 5 permissive appeal as being an inadequate alternative remedy. As discussed above, the defendants have demonstrated a clear legal right from the face of Gertha's complaint to a summary judgment in their favor. The question presented here is not the type of unsettled question of law for which there is a ground for substantial difference of opinion that is generally considered in a Rule 5 permissive appeal. More importantly, there is no guarantee of Rule 5 certification because certifying an interlocutory order for a 'permissive' appeal is within the wide discretion of the trial judge. Moreover, should the trial court grant its consent to appeal, there is no guarantee that this Court would accept the question certified.

21

"Likewise, the taking of an appeal from a final judgment following further litigation of this matter is also an inadequate remedy based on the particular circumstances of this case. If appeal were their only remedy the defendants would potentially face the substantial expense, time, and effort of litigating a matter as to which they have demonstrated from the face of Gertha's complaint a clear legal right to have dismissed."

153 So. 3d at 746-49.

In this case, Alfa and Dimoff have demonstrated, based on the face of the complaint, a clear legal right to a summary judgment in their favor. Also, this case involves no unsettled, controlling question of law, and this Court previously declined to accept Alfa and Dimoff's petition for a permissive appeal. Thus, appeal by permission under Rule 5, Ala. R. App. P., is plainly an inadequate remedy in this case. See Hodge, supra. Additionally, based on the particular circumstances in this case, an appeal from a final judgment following further litigation is also an inadequate remedy. As in Hodge, Alfa and Dimoff "face the substantial expense, time, and effort of litigating a matter as to which they have demonstrated from the face of [the] complaint a clear legal right to have dismissed." Hodge, 153 So. 3d at 749. Accordingly, Alfa and Dimoff have demonstrated the lack of another adequate remedy.

22

Because Alex and Dimoff have demonstrated, from the face of the complaint, that they are entitled to a summary judgment on statute-of-limitations grounds and because they have demonstrated the lack of another adequate remedy, a writ of mandamus is an appropriate remedy in this case. See Hodge, supra.

## Conclusion

For the above-stated reasons, we grant the mandamus petition and issue the writ directing the trial court to set aside its May 22, 2025, order denying Alfa's and Dimoff's motions for a summary judgment and to enter a summary judgment for Alfa and Dimoff.

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Bryan, Sellers, Mendheim, Cook, McCool, and Parker, JJ., concur.

Shaw, J., concurs in the result.