[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 425 
The plaintiffs Ron Brushwitz and Faye Brushwitz appeal a summary judgment entered in favor of the defendants Carl W. Ezell and Ezell, Ryberg Associates, Inc. (together referred to as "Ezell").
On June 21, 1998, the Brushwitzes sued Ezell; Kinco Pest Control, Inc.; Edward *Page 426 
Collier; and Complete Residential Inspections, L.L.C. Their claims arose out of their purchase of a used residence in Madison County. The complaint alleged that on June 9, 1997, following an appraisal, a termite inspection, and a home inspection finding no termite infestation or damage, wood-decaying fungus, or moisture damage, the Brushwitzes purchased a residence located at 2697 Ready Section Road in Toney. The complaint also alleged that on May 6, 1997, Ezell inspected the property and issued an appraisal containing the following phrases appearing under the heading "Foundation":
"Dampness NO EVIDENCE
"Settlement NO EVIDENCE
"Infestation NO EVIDENCE"
(C. 5.)
The complaint alleged that on September 12, 1997, however, evidence of termite infestation, termite damage, excessive moisture, wood-decaying fungus, and wood rot was discovered in various parts of the Brushwitzes' house, including the crawl space, the foundation, and the attic. The Brushwitzes' complaint alleged that the defendants had negligently or wantonly inspected their home for termite infestation and fungal growth; that they had suppressed the condition of the house; and that they had recklessly, willfully, and fraudulently misrepresented the condition of the residence and the presence of termite infestation, termite damage, and wood-decaying fungus.
Ron Brushwitz, a technical writer and editor of weapon-system manuals for the Army Aviation and Missile Command at Redstone Arsenal, testified by deposition that he and his wife, after looking at the house approximately two times, decided to purchase it. Norwest Mortgage, Inc. ("Norwest"), sent an appraisal notice to the Brushwitzes for their signature. The notice, which was signed by the Brushwitzes on March 27, 1997, included this disclaimer:
"You should note that:
 "1) The appraisal was performed for the lender's use to determine the adequacy of the property as security for the loan and not for your use to determine value,
 "2) the appraisal does not guarantee nor imply that the house is free of defects, and
 "3) you need to take whatever steps you feel are necessary to assure yourself that the house is acceptable to you before closing the purchase of the home."
(C. 208.)
Mr. Brushwitz testified that on April 2, 1997, Edward Collier, who was employed by Complete Residential Inspections, inspected the home. Mr. Brushwitz agreed that the inspection report stated that the property was reinspected on April 5, May 4, and May 22, 1997, to follow up on problems with the heat pump and the water heater. Mr. Brushwitz also testified that the appraisal and the termite inspections were performed before the closing occurred on June 9, 1997.[1] Norwest had retained Ezell to perform the appraisal.
After purchasing the house, the Brushwitzes discovered "flying ants" on the patio. They telephoned Morgan Pest Control. Donald Morgan of Morgan Pest Control inspected the house and reported that the house had active termites, black fungus, and rotten lumber. Mr. Brushwitz contacted the State Department of Agriculture, which sent someone to inspect the property.[2]
Mr. Brushwitz testified that, despite his reading and signing the disclaimer sent by Norwest, he did not obtain another appraisal for the property. However, Mr. Brushwitz was unable to recall exactly when he received and read the appraisal *Page 427 
report. All that he could say was that he had read the report before or at closing. In addition, he testified that he understood the sales contract, which stated that with a conventional loan "any appraisal required by the lender is used by the lender to determine the maximum mortgage amount and does not warrant the value or condition of the property, to the lender."[3]
(Deposition of Ron Brushwitz, p. 252.) Mr. Brushwitz also testified that he would not have bought the house if he had known of the termite and fungal problems.
At her deposition, Faye Brushwitz testified that she had worked as a licensed realtor in Trenton, Illinois, for five years. She stated that in her years as a realtor she was involved in making arrangements for termite and home inspections. She agreed that the home inspector, the termite inspector, and the appraiser had different and distinct jobs. She could not recall, however, whether she saw the real-estate appraisal for the home before the closing or saw it afterwards. Mrs. Brushwitz stated that she understood the disclaimers contained in the sales contract and the appraisal notice sent to the Brushwitzes from Norwest.
Carl Ezell, a licensed appraiser and owner of Ezell, Ryberg 
Associates, Inc., testified by deposition that Norwest retained him to perform an appraisal in anticipation of the purchase of this piece of property. He had appraised this same residence in 1992, and he used some of the information from the prior appraisal to reach the conclusions for the 1997 appraisal.
Mr. Ezell testified that he was subject to the Uniform Standards of Professional Appraisal Practice ("USPAP").[4]
When questioned about his normal procedure for appraising a house, he stated:
 "A. Okay. Physically we go and make observations of the property, such as you see on the report, you know, it's got gutters or what type of windows, and we make observations —
"Q. Okay.
 "A. — basic observations. We measure the house, get all the dimensions so that we can accurately and adequately determine how large it is. Of course, we walk through the inside and look at the outside with a very limited inspection and basically gather the information on our worksheet, come back to the office, determine how big it is by, you know, figuring the square footage.
 "And then we begin pulling comparable sales from the Huntsville Board of Realtors to find homes in the area that are similar to it, and we make a list of those. We complete the first part of the report.
 "We then go to the valuation section and start trying to determine which comparables are the best to use for this particular property, and we put those in the grid and fill that out. And all through this process we're gathering other information such as lot dimensions, you know, the information you need."
(Deposition of Carl Ezell, pp. 35-36.)
The "Uniform Residential Appraisal Report" submitted by Mr. Ezell contained a "Statement of Limiting Conditions" and an "Appraiser's Certification." The report, in its "Statement of Limiting Conditions," carried the following paragraph:
 "6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection *Page 428 
of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property."
(C. 99.) Under the heading "Appraiser's Certification," the report stated:
 "8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property."
(C. 100.)
Mr. Ezell testified that during his inspection of the Brushwitzes' house, he did not go into the crawl space or onto the roof. He could not recall if he looked into the attic. He did, however, look at the exterior and the interior of the house. He also opened the crawl-space door and looked inside. He observed the roof by stepping away from the house and looking.
Mr. Ezell stated that his contract was exclusively between himself and Norwest and that the Brushwitzes had had no reason to rely on his appraisal. He noted that many borrowers never look at the appraisal performed for the mortgage company. Ezell also explained that the purpose of the appraisal is to express an opinion of value, not an opinion of condition. He stated that he formed an opinion of value based on observations, not based on factual information. In his affidavit, he described his job:
 "While typically and in this case, I did visually inspect the property in accordance with the standards of my profession, this is done for the purpose of determining that the house and improvements are as described, and are generally comparable in design, appeal, size and diminutives, with other comparable real properties, toward the purpose of forming an opinion as to the Fair Market Value. I am not a contractor, engineer, termite inspector or professional home inspector, and a real estate appraisal does not purport to provide expert information concerning those items. While I typically note any obvious adverse conditions observed during a visual inspection of the property to the extent that such conditions might impact upon the Fair Market Value, I do not assess latent, hidden or unapparent conditions, and as stated in the appraisal, the appraisal is based upon the assumption that no such conditions exist."
(C. 91.)
Mr. Ezell stated that termite infestation and damage are most likely an adverse condition as described in paragraph 6 of the appraisal's limiting conditions. According to Mr. Ezell, any evidence of termite infestation and dampness he observed would be listed as an adverse condition and would subject his appraisal to a qualified termite inspection. In fact, he testified *Page 429 
that if he had found termites during his inspection, the house would have been worth less than $123,000 until repairs were done. Mr. Ezell stated that he was not an expert at termite inspections, and he said he did not think he would even recognize fungus on wood in a crawl space.
On April 17, 1998, Ezell moved for a summary judgment. Thereafter, the trial court entered an order stating:
 "On December 4, 1998, this cause came to be heard on the [motion of] Carl W. Ezell and Ezell, Ryberg and Associates, Inc. . . . for Summary Judgment.
 "Upon consideration of the Motion, the evidentiary submissions and memorandum briefs of both Defendants and Plaintiffs, this Court grants the Motion for Summary Judgment on all counts in favor of Carl Ezell and Ezell, Ryberg 
Associates, Inc.
 "This Court further makes this judgment final pursuant to Rule 54(b), [Ala.R.Civ.P.,] in that there is no just reason for delay. The Plaintiffs have allegedly purchased a substantially damaged residence based upon the [tortious] conduct of the Defendants. The Court expressly finds that the interest of having the proper parties before the trial court for adjudication only once serves the interests of justice and all of the parties to this action."[5]
(C. 338.) This appeal followed.
This Court's review of a summary judgment is de novo:
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
The Brushwitzes claim that Ezell misrepresented the condition of the house. The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence. ForemostIns. Co. v. Parham,693 So.2d 409, 422 (Ala. 1997). Before this Court decidedForemost Insurance, it had defined fraud to include an element of "justifiable" reliance, rather than the element of "reasonable" reliance. In Foremost Insurance, we substituted the reasonable-reliance standard for the justifiable-reliance standard for cases filed after March 14, *Page 430 
1997, the date that case was decided.[6] Id. at 421. We stated in ForemostInsurance:
 "The `reasonable reliance' standard is, in our view, a more practicable standard that will allow the fact-finder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties. In addition, a return to the `reasonable reliance' standard will once again provide a mechanism, which was available before [Hickox v. Stover, 551 So.2d 259 (Ala. 1989) — the case that had adopted the `justifiable reliance' standard], whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."
693 So.2d at 421. A person has a duty to read the documents related to a particular transaction. Id.
We must first determine whether the Brushwitzes presented substantial evidence indicating a misrepresentation of material fact by Ezell. We find no such evidence. Contrary to the Brushwitzes' assertions, Ezell did not guarantee the condition of the house; at most, Ezell simply placed a value on the home. The purpose of the appraisal was set forth in Norwest's disclaimer, which stated that the appraisal was not performed for the purchasers to use in determining the value of the house, but was performed for the lender. In addition, the disclaimer stated that the appraisal did not guarantee that the house was free of defects. According to Mr. Ezell's affidavit, he did not see any evidence of wood-destroying organisms or termites. The Brushwitzes offered no evidence indicating that the termites and wood-destroying organisms were present or visible at the time of Mr. Ezell's inspection. Therefore, a jury could not conclude from the evidence presented that Mr. Ezell misrepresented material facts.
The Brushwitzes also claim that Mr. Ezell did not inspect the interior and the exterior of the home and that Ezell misrepresented this fact. However, Ezell presented evidence indicating that Mr. Ezell followed his procedures for appraising a home. Mr. Ezell made a visual inspection of the roof and he stuck his head in the crawl space. The Brushwitzes argue that he should have inspected the attic, but Mr. Ezell testified that in making an appraisal inspection he normally did not go into the attic of a house. The Brushwitzes presented no evidence indicating that Mr. Ezell neglected to follow ordinary appraisal procedures.
The Brushwitzes also failed to present evidence from which a jury could find the "reliance" element of a fraud claim. Ron Brushwitz read government contracts for a living, and Faye Brushwitz had been a real-estate agent and was familiar with the process of buying and selling a home. The plaintiffs were fully capable of reading and understanding the document containing the disclaimer. Any reliance by them on the appraisal would have been unreasonable. See Foremost Insurance, 693 So.2d at 421.
The Brushwitzes argue that they relied on the appraisal and decided to purchase the house because the appraisal failed to indicate any defects in the house. However, the Brushwitzes could not say with certainty when they received and read the appraisal. Moreover, the appraisal report explicitly stated that it was not an evaluation of the condition of the house. The disclaimer signed by the Brushwitzes stated that the appraisal was not to be used by *Page 431 
the Brushwitzes to determine the value of the house, but only to assist the lender in determining whether the house would have been adequate to secure payment of the loan the Brushwitzes were seeking. (C. 208.) By signing the disclaimer, the Brushwitzes acknowledged that the appraisal was not a guarantee regarding the condition of the home.
In her deposition, Mrs. Brushwitz testified about the job of an appraiser:
 "Q. And as a realtor you knew that an appraiser was not a termite inspector, true?
". . . .
"A. Yes.
 "Q. You knew that the appraiser was not the home inspector?
". . . .
"Q. Is that true?
"A. Yes.
 "Q. All three of those professions had different roles, isn't that correct?
". . . .
"A. Yes.
 "Q. And you knew from your experience as a realtor that an appraiser was somebody who was being called upon by the mortgage company to render an opinion as to the fair market value of the real property that was involved in the transaction, isn't that correct?
". . . .
"A. Correct.
 "Q. Whereas a pest-control inspector would be the one to go to the house and assess whether or not there [were pests] or [a wood-destroying] organism infestation or damage?
". . . .
"Q. Isn't that true, based on your experience?
"A. I guess, yes.
". . . .
 "Q. In terms of going to the house for the purpose of performing an inspection for the buyer and advising about needed repairs or deficiencies, that sort of thing, that would generally be the role of the home inspector, isn't that correct?
". . . .
"A. Yes."
(C. 219-20.) Mrs. Brushwitz's questioning continued:
 "Q. And you weren't relying on an appraiser to go and do a pest-control inspection or try to ascertain facts concerning pest-control issues or infestations, true?
"A. True."
(C. 222.) Based on the foregoing, we conclude that the Brushwitzes failed to present substantial evidence indicating a misrepresentation, be it innocent, willful, or reckless.
The Brushwitzes also claim that Ezell suppressed a material fact. The elements of suppression are: (1) a duty on the defendant to disclose a material fact; (2) the defendant's concealment or nondisclosure of that fact; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury.ForemostInsurance, 693 So.2d at 423. Silence on the part of the defendant regarding a material fact is not considered suppression unless the defendant has an obligation to communicate that fact. Id. "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." § 6-5-102, Ala. Code 1975.
Here, Mr. Ezell did not have a duty to disclose, because no confidential relationship existed between him and the Brushwitzes. Although the Brushwitzes claim that under the USPAP appraisers have a fiduciary duty to "intended users," this claim must fail. A fiduciary relationship is a confidential relationship in which one person is obligated to act in another person's best interests. See, e.g., K C Dev. Corp. v. AmSouth Bank, N.A., 597 So.2d 671
(Ala. 1992) (quoting Bank of Red Bay v. King, 482 So.2d 274, 284
(Ala. *Page 432 
1985)). The relationship between Ezell and the Brushwitzes was not a confidential one. Indeed, the disclaimer signed by the Brushwitzes stated that the appraisal was not intended for their use. Although Norwest issued the disclaimer and the Brushwitzes signed it, the subject of the disclaimer was the appraisal performed by Mr. Ezell.
The Brushwitzes' personal experience in purchasing and selling real estate, in reading and setting up appraisals for those properties, and particularly Mrs. Brushwitz's background as a real-estate agent provided them with an understanding of appraisal reports. Ezell did not have a fiduciary duty to them. See Foremost Insurance, 693 So.2d at 424.
As with the misrepresentation claim, there arises with the suppression claim a question whether the statements in the appraisal were material, given that appraisals are considered statements of opinion, rather than statements of fact. Kaye v.Pawnee Constr. Co., 680 F.2d 1360, 1368 (11th Cir. 1982). Mr. Ezell does not claim to be an expert at termite inspections or at home inspections. Mrs. Brushwitz testified that she understood the distinct jobs that a home inspector, a termite inspector, and an appraiser were to perform.
In addition, the Brushwitzes presented no evidence indicating that the termite infestation and damage and the fungus were present at the time of Ezell's appraisal or indicating that any of the infestation or damage, if it was present, was visible. "One can be liable for suppression only of a fact of which one has knowledge." Dodd v. Nelda Stephenson Chevrolet, Inc.,626 So.2d 1288, 1292 (Ala. 1993). The only evidence the Brushwitzes provided that suggests termites and fungus were present when Mr. Ezell made the appraisal appears in the deposition testimony of Donald Morgan:
 "Q. . . . Did you have any way of determining how long that light fungus had been there?
 "A. No, it is hard to say. I don't know how old the house is. I know it was inadequately ventilated. It was not something that had started yesterday. It was in my experience — In my opinion [it] had been there for months if not years. It is hard to say. . . .
". . . .
 "Q. Could you say for certain that the light fungus that was not associated with that leak back there would have been there on — Could you say for certain that the light fungus would have been visible in that form May 29 of 1997?
"A. In my opinion, yes, sir, it would have been.
 "Q. Do you think it would have been in that same condition at that time?
 "A. I don't know. Probably so, yes, sir. It does not grow real fast."
(Deposition of Donald Morgan, pp. 24-25.) Morgan's testimony did not provide substantial evidence indicating that Ezell knew that the termite and fungus problem existed or indicating that the problem was or should have been evident to Mr. Ezell at the time of the appraisal. Evidence supporting nothing more than speculation, conjecture, or a guess does not rise to the level of substantial evidence. Smoyer v. Birmingham Area Chamber ofCommerce, 517 So.2d 585, 588 (Ala. 1987).
The Brushwitzes also claim that Ezell negligently or wantonly inspected their home. This Court has stated:
 "To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. Albert v. Hsu, 602 So.2d 895, 897 (Ala. 1992). To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted *Page 433 
some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains. Smith v. Davis, 599 So.2d 586 (Ala. 1992)."
Martin v. Arnold, 643 So.2d 564, 567 (Ala. 1994). The existence of a duty to the Brushwitzes is questionable because 1) they signed the disclaimer from Norwest and 2) the appraisal contained limiting conditions. At most, Mr. Ezell had a duty not to mislead in his appraisal report. USPAP, Rule 2-1. Rule 2-1 provides:
 "Each written or oral real property appraisal report must:
 "(a) clearly and accurately set forth the appraisal in a manner that will not be misleading;
 "(b) contain sufficient information to enable the person(s) who are expected to receive or rely on the report to understand it properly;
 "(c) clearly and accurately disclose any extraordinary assumption or limiting condition that directly affects the appraisal and indicate its impact on value."
The Comments to Rule 2-1 state that persons expected to receive or rely on a "Summary Appraisal Report," which appears to be the appraisal at issue in this case, are the client and intended users. "Intended users," according to the definition section of the USPAP (1997 ed.), are "the client and any other party as identified, by name or type, as users of the appraisal, consulting, or review report, by the appraiser based on communication with the client at the time of assignment."
Here, the "client" was Norwest. The Brushwitzes could be considered intended users because they were listed on the appraisal as the borrowers. However, the relationship between Ezell, the Brushwitzes, and Norwest was altered by the disclaimer. Thus, Ezell had no duty to the Brushwitzes. If no duty exists, there can be no breach of duty. However, even assuming Ezell had a duty to the Brushwitzes, we note that the Brushwitzes presented no evidence indicating that Mr. Ezell misled the Brushwitzes. The purpose of his appraisal was to provide an estimate of the fair market value of the house. The fair market value provided would have been the same if Mr. Ezell had made the appraisal subject to a termite inspection, given that the termite inspection failed to indicate any problems. The Brushwitzes presented no evidence of negligence and no evidence of wantonness, on the part of Ezell.
The evidence presented in this case "affords nothing more than mere speculation, conjecture, or guess [and] is completely insufficient to warrant the submission of [the] case to the jury."Smoyer v. Birmingham Area Chamber of Commerce, 517 So.2d at 588. The Brushwitzes failed to present substantial evidence indicating misrepresentation, suppression, negligence, or wantonness on the part of Ezell. Therefore, the trial court properly entered the summary judgment in favor of Ezell.
AFFIRMED.
Hooper, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
[1] According to the record, the appraisal was conducted on May 6, 1997, and the termite inspection took place on May 29, 1997.
[2] Morgan's report is contained in the record; however, the State's evaluation is not.
[3] This statement apparently appears on the back of the sales contract. Although the page is referred to as Exhibit 1 to Ron Brushwitz's deposition, the page is not attached and does not appear in the remaining parts of the record.
[4] Section 34-27A-23, Ala. Code 1975, provides: "A licensed real estate appraiser shall comply with the current Uniform Standards of Professional Appraisal Practice approved by the board."
[5] The Brushwitzes' claims against Kinco Pest Control, Inc., the company that performed the termite inspection; Complete Residential Inspections, L.L.C., the home-inspection company; and Complete's home inspector, Edward Collier, were not disposed of by summary judgment.
[6] This present case is subject to the Foremost Insurance
reasonable-reliance standard because this case was filed after March 14, 1997.