Burt F. Baker appeals from a summary judgment entered by the Montgomery Circuit Court in favor of defendants Metropolitan Life Insurance Company ("MetLife") and Gary Baldridge. We affirm.
 I. Facts and Procedural History
In October 1989, Baker purchased a whole-life insurance policy from MetLife. In his complaint, Baker alleges that Baldridge, MetLife's agent who sold Baker the policy, represented to Baker that after he paid the annual premium on the policy for 11 years, the policy would become self-sufficient and that he would not have to pay any additional out-of-pocket premiums. In this sort of premium-payment plan, interest and dividends earned from the investment of the previously paid premiums can be used to pay future premiums, thus relieving the insured of the duty to pay those premiums directly. According to Baker, in deciding to purchase the policy he relied on Baldridge's representation that the policy would become self-sufficient after he had paid the annual premium for 11 years.
Baker paid 11 annual premiums. The amount of interest earned on those premiums was insufficient to fund payment of future premiums. Accordingly, MetLife informed Baker that he would be required to pay additional annual premiums. Baker sued MetLife and Baldridge in the Montgomery Circuit Court, alleging fraudulent misrepresentation, fraudulent omission, negligent misrepresentation, and negligent supervision. MetLife and Baldridge moved for a summary judgment based on their arguments that the statutory period of limitations had run on Baker's claims and that Baker could not prove that he had relied on Baldridge's alleged misrepresentations, an essential element of a fraud claim. The trial court granted the motion but did not explain its reasoning. Because we hold that Baker did not produce substantial evidence indicating that he relied on Baldridge's alleged fraudulent actions, we need not address MetLife and Baldridge's statute-of-limitations defense.
 II. Standard of Review
In reviewing an order granting a motion for a summary judgment, we apply the same standard the trial court applied in ruling on the motion. Hoover, Inc. v. State Dep't of Revenue,833 So.2d 32, 34 (Ala. 2002).
 "`"To grant [a summary-judgment] motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact."'"
833 So.2d at 34 (quoting Payton v. Monsanto Co., 801 So.2d 829,833 (Ala. 2001), quoting in turn Ex parte Alfa Mut. Gen. Ins.Co., 742 So.2d 182, 184 (Ala. 1999)). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 III. Analysis
"[I]n order to recover for fraud, [Baker] must establish (1) that [Baldridge] made a false representation, (2) that the misrepresentation involved a material fact, (3) that [Baker] relied on the misrepresentation, and (4) that the misrepresentation damaged [Baker]." Liberty National Life Ins.Co. v. Ingram, 887 So.2d 222 (Ala. 2004). In addressing inIngram the nature *Page 421 
of the reliance required to support a fraud claim, we quotedForemost Insurance Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997):
 "[W]e conclude that the `justifiable reliance' standard adopted in Hickox [v. Stover, 551 So.2d 259 (Ala. 1989)], which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the `reasonable reliance' standard most closely associated with Torres v. State Farm Fire Casualty Co., 438 So.2d 757 (Ala. 1983). The `reasonable reliance' standard is, in our view, a more practicable standard that will allow the factfinder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties."
Therefore, in order to satisfy the reliance element of his fraud claim Baker must show not only that he relied on Baldridge's alleged misrepresentation regarding the number of premiums required, but also that that reliance was reasonable in light of the facts surrounding the transaction in question. See alsoBrushwitz v. Ezell, 757 So.2d 423, 429 (Ala. 2000) ("The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." (emphasis added)).
In Ingram, supra, an insured claimed that the insurance company guaranteed that his insurance policy would be completely "paid up" in 10 years and that thereafter he would not be required to pay any further premiums. When the plaintiff learned that payments in excess of what he had expected to pay would be required to keep the policy in effect, he sued the insurance company, alleging fraud. We held that the plaintiff, who had a seventh-grade education and could read and write, had not presented substantial evidence of his reliance on alleged misrepresentations by the insurance company regarding how many premium payments would be required. We based our holding on the existence of evidence that contradicted what the plaintiff said the insurance agent had allegedly promised and that should have put the plaintiff on notice of the alleged misrepresentations. We noted that, in determining whether to purchase the policy in question, the plaintiff had access to tables indicating both the guaranteed and the projected cash values and the current interest rates applicable to the policy. That evidence contradicted the plaintiff's assertion that the insurance company had represented to him that the policy was guaranteed to earn interest at a rate of 9.75%, which would generate sufficient interest to "pay up" the policy after 10 years. Another table setting forth the premium schedule contained a column entitled "`years payable,'" under which the word "`life'" was written.
In Alfa Life Insurance Corp. v. Green, 881 So.2d 987 (Ala. 2003), the plaintiffs claimed that Alfa's agent had promised them that they would be required to make only nine annual premium payments in return for a life insurance policy, after which they would not be required to pay any additional premiums. We held that Alfa should have been granted a judgment as a matter of law because the plaintiffs had not shown that they had reasonably relied on the alleged misrepresentation of Alfa's agent. The evidence showed that the plaintiffs had been provided with a premium schedule containing two separate columns. One column, entitled "GUARANTEED," *Page 422 
showed that premiums would be required until the insured was 75 years old, which would have resulted in the plaintiffs' making substantially more payments than they had allegedly been told they would have to pay. The table contained another column, entitled "PROJECTED VANISH," that showed the number of premiums that the plaintiffs would have to pay if the interest rate remained at 8.5%. The evidence also showed that one of Alfa's agents had explained to the plaintiffs that if the interest rate decreased, more time would be required for the policy to "pay for itself." One of the plaintiffs in Green had an eleventh-grade education while the other was a high-school graduate. Both could read and write.
In the instant case, Baker was presented with a premium schedule containing the heading "years payable," under which is written "73." In his complaint, Baker alleges that he understood that further premiums would have to be paid on the policy after 11 years, but that he was under the impression that those premiums would not be paid directly by him. In other words, according to Baker's complaint, "Defendants represented that the policy would become self-sustaining for the Plaintiff's life after eleven (11) years of out-of-pocket premiums." Baker argues that "[i]t was certainly reasonable for him to believe that the policy dividends would continue to fund any additional premiums and the fact that the policy states that premiums are `payable' for 73 years does not contradict the misrepresentations that `he' would only have to pay 11 times. . . ."
In addition to the "years payable" table, Baker was also presented with another document containing the heading, "ACCELERATED PAYMENT PLAN," which states:
 "After premiums for your policy have been paid for 11 years, the Accelerated Payment Plan allows you to choose to pay future premiums as they fall due through the use of dividends, by withdrawing from the cash value of additional insurance or accumulated dividends with interest an amount which, together with the current dividend, will pay the current premium. When you wish to start this procedure, ask your Metropolitan Sales Representative to confirm that the dividends credited to your policy together with dividends based on the scale then in effect are sufficient to accomplish this objective. If dividends are sufficient, the procedure requires that future premium payments be paid annually (no outlay by you). Your Sales Representative will assist you in making this change, if necessary, and in putting this procedure in effect.
 "The number of years that premium payments in cash are required under the Accelerated Payment Plan is based on the dividend scale in effect at the time the policy is issued. Dividends, however, are not guaranteed. Changes in dividend scales after issue may increase or decrease the number of years shown. Also, if future dividend scales decrease after this payment procedure is started, it is possible that dividends may not be sufficient in some future years to pay the then full current premium.
 "The Accelerated Payment Plan increases your flexibility. When dividends are sufficient, you may stop your cash outlay, or continue to pay your premiums as you normally do. Even if you have chosen to pay premiums by the Accelerated Payment Plan, you may return to paying your premiums as you previously did at any time."
(Emphasis added.)
Baker was 27 years old when he applied for the insurance policy in question. He is *Page 423 
a high-school graduate; he can read and write; and he owns his own railroad construction company. In light of the language contained in the documents surrounding this transaction, and in light of Ingram and Green, supra, we conclude that Baker has not produced substantial evidence indicating that his reliance, if any, on Baldridge's alleged misrepresentation wasreasonable. Baker and Baldridge do not share the sort of special relationship that was present between the plaintiff and the defendant in Potter v. First Real Estate Co., 844 So.2d 540
(Ala. 2002) (involving a real estate agent and a buyer). In light of the conflict between Baldridge's alleged misrepresentations and the documents presented to Baker when he entered into the transaction in question, it cannot be said that Bakerreasonably relied on the Baldridge's representations.
Because Baker has not produced substantial evidence indicating that, in purchasing the insurance policy, he reasonably relied on Baldridge's alleged misrepresentation regarding the number of out-of-pocket premiums required to fund the policy, the trial court was correct in entering a summary judgment for Baldridge and MetLife on Baker's fraud claims. Baker does not argue that the trial court erred in entering a summary judgment in favor of Baldridge and MetLife on Baker's claim of negligent hiring/supervision; therefore, he has waived that argument.
 IV. Conclusion
Because, in the absence of evidence of reasonable reliance by Baker on any alleged misrepresentation by Baldridge and MetLife, the trial court was correct in entering a summary judgment in favor of Baldridge and MetLife, we need not address whether the statute of limitations precludes Baker's claims.
AFFIRMED.
NABERS, C.J., and HOUSTON, JOHNSTONE, and WOODALL, JJ., concur.