SHAW, Justice
(dissenting).
I respectfully dissent. Alabama law provides that one cannot reasonably rely on misrepresentations when facts and circumstances call those misrepresentations into doubt. Those facts and circumstances need only be “reasonably apparent”; they do not have to be written representations found in an executed contract.
“This Court has held ... that to close one’s eyes to facts and circumstances reasonably apparent to the ordinary person does not relieve one of the responsibility of what the facts would have revealed if the inquiry they inspired had been made. For example, an automobile dealer may not ignore factory damage to an automobile and thereby avoid joint liability with the manufacturer for fraud (Chrysler Corp. v. Schiffer, 736 So.2d 538 (Ala.1999)); nor can a dealer, when purchasing a used car for resale, close its eyes to the true mileage and condition of a car and rely instead on an odometer reading that is patently incorrect in light of the obvious state of the car. See Hargrove v. Cantrell, 547 So.2d 488 (Ala.1989). An architect cannot avoid liability by closing his or her eyes to ‘construction defects that even the most perfunctory monitoring would have prevented’ (Watson, Watson, Rutland/Architects, Inc. v. Montgomery County Board of Educ., 559 So.2d 168, 173 (Ala.1990)); and ‘[a] purchaser simply cannot “[close] his eyes where ordinary diligence requires him to see,” and expect to recover in a fraudulent misrepresentation action.’ Hughes v. Cloud, 504 So.2d 734, 735 (Ala.1987).”
Redman v. Federal Home Loan Mortg. Corp., 765 So.2d 630, 634-35 (Ala.1999). See also AmerUs Life Ins. Co. v. Smith, 5 So.3d 1200, 1215-16 (Ala.2008) (“In light of the language of the documents surrounding the insureds’ purchase of the life-insurance policies at issue in this case and the conflict between [the agent’s] alleged misrepresentations and the documents presented to [the plaintiff], it cannot be said that [the plaintiff] reasonably relied on [the agent’s] representations.”), and Baker v. Metropolitan Life Ins. Co., 907 So.2d 419, 423 (Ala.2005) (holding that, because “language contained in the documents surrounding this transaction” called into question the alleged misrepresentation, the plaintiff had “not produced substantial evidence indicating ... his reliance, if any, on [the] alleged misrepresentation”).
As the above authorities show, the facts and circumstances that may call a misrepresentation into doubt do not have to be in a written contract. The decision in Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997), discusses statements found in a written contract because, in that case, that is where those statements were found.[13] I see no need to limit the “facts and circumstances” that can call into question one’s reliance on a misrepresentation to written representations found only in an executed contract. This, I believe, reflects a significant step back to the “justifiable-reliance” standard rejected almost 19 years ago and partially overrules Foremost sub silentio.
Here, some local Farmers[14] agents told Robert Kyle Morris that his business arrangement with his father did not present an ethical problem. However, as part of the employment process, Farmers gave Morris, a new agent, a manual he was *993 required to read. The “Code of Business Ethics and Professional Standards” portion of the manual, which dealt with business ethics, clearly stated that Morris’s arrangement with his father created a conflict of interest.[15] In fact, the illustrations in the manual provided: “Accordingly, an agent who offices with an agent or broker of another insurance company, will be considered as maintaining a conflict of interest.” Morris acknowledged to Farmers that he had reviewed this material.
This is not a situation involving a minor point or seemingly inconsequential detail susceptible to being overlooked. If so, then at least an argument could be made that a jury question existed. Under the facts of this case, however, Morris’s arrangement with his father was clearly a concern to him, as evidenced by the numerous times he inquired about its propriety. He was not merely curious as to whether his arrangement with his father was permitted; instead, as both the main opinion and Morris stress, he repeatedly questioned the matter: “[Morris] clearly and unequivocally and repeatedly asked about whether it was a problem for him to continue working with his father’s independent agency.” Morris’s brief, at 7. The manual addressed the exact issue Morris was specifically concerned about. It seems inconceivable that he read the one part of the manual that directly addressed the issue that he was adamantly concerned about but that he would not, as a reasonable person, comprehend that it called into question the oral representations he received and then bring that provision of the manual to the attention of the local agents. Given Morris’s specific concern, and his vigorously professed interest in resolving that concern, I do not believe that a reasonable jury could properly conclude that the information that actually addressed Morris’s concern did not provide a reasonable basis for him to suspect that the representations he had received might be wrong. Of course, the manual does not “nullify” the agents’ misrepresentations, as the main opinion characterizes Farmers’ argument. Instead, it calls into question any reasonable reliance on those misrepresentations. I submit that, when an insurance agent is told by local representatives of his company that a business arrangement is ethical, he cannot “close his eyes” to an ethics manual'from the corporate office that defines what is ethical and shows the opposite.
Here, the local Farmers agents told Morris that his business relationship with his father presented no ethical problem. Farmers itself told Morris that the relationship did present an ethical problem. The main opinion holds that what Farmers said about its own policy would not reasonably alert Morris that what the local agents said might be wrong, and, thus, that Farmers is liable for fraud. This holding turns Foremost on its head; therefore, I must respectfully dissent.
STUART and BOLIN, JJ., concur.

. Foremost criticized the “justifiable-reliance” standard as ‘‘eliminating] the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial).” 693 So.2d at 421 (emphasis added).

. I use "Farmers” in the collective sense identified in the main opinion.

. It is argued that this portion was ''buried” in the document. However, Morris was required to read the document, and he told Farmers that he did so.