PARKER, Justice.
Bryant Bank appeals from a partial summary judgment in favor of Talmage Kirkland & Company, Inc., d/b/a Kirkland & Company (“TKC”), and Quentin Ball and Jason Stoutamire, appraisers for TKC (hereinafter collectively referred to as “the defendants”), by the Baldwin Circuit Court. We reverse the circuit court’s judgment and remand the case for further proceedings.

Facts and Procedural History

This case arises out of an appraisal of real property (“the property”) conducted by TKC for Bryant Bank in the course of Bryant Bank’s consideration of a loan application submitted by Wallace Seafood Traders, Inc. (‘WST”), in September 2007 for the purchase of the property, which WST was renting and out of which it was operating its business. At the time of WST’s application, Bryant Bank was in possession of an appraisal of the property, which included a seafood-storage facility, that had been prepared for another bank by Weldon Payne in July 2007. Payne’s appraisal report indicated that, in his opinion, the property had a market value of $2,400,000. Payne’s appraisal report included a quote from J.P. Refrigeration, which indicated that the “as new” cost of the scheduled equipment in the seafood-storage facility was $1,950,000. Payne’s appraisal report indicates that the depreciated value of the equipment at the time of the appraisal was $1,250,000.
In the course of considering WST’s loan application, Bryant Bank contacted TKC and requested an additional appraisal of the property. On November 26, 2007, Ball, a real-estate appraiser for TKC, signed an engagement letter agreeing to provide Bryant Bank “an appraisal report estimating the Market Value of the ... property as defined by the Uniform Standards of Professional Appraisal Practice (USPAP).” The engagement letter further stated: “It is fully understood and agreed upon that this appraisal is being engaged by and prepared solely for Bryant Bank, the client of this report. The ap *233 praisal report is intended for use as an aid in property underwriting, loan classification and/or disposition of the asset.”
On December 10, 2007, TKC provided Bryant Bank with an appraisal report indicating that the property had a market value of $1,700,000.[1] TKC’s appraisal report contained a certification, signed by Ball and Stoutamire, another real-estate appraiser for TKC, that the “analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) of The Appraisal Foundation. The individual appraisers are in compliance with the Competency Provision of USPAP.”
The Bryant Bank employees responsible for approving WST’s loan application suspected that the value of the property might have been overstated in TKC’s appraisal. However, Bryant Bank approved WST’s loan application and issued the loan to WST on or about December 18, 2007,[2] because, even if Bryant Bank “deeply discounted” the value of the property based the uniqueness of the property, the property would still serve as sufficient collateral to cover the loan.
On or about October 28, 2008, WST defaulted on the loan. Subsequently, Bryant Bank obtained another appraisal of the property from a different appraisal firm; this new appraisal indicated that the property had a value of $205,000.[3] On July 3, 2010, Bryant Bank sued the defendants, alleging breach of contract and negligent misrepresentation arising from its reliance on TKC’s appraisal report in issuing the loan to WST.
On October 19, 2012, the defendants filed a motion for a partial summary judgment. In their partial-summary-judgment motion, the defendants argued that Ball and Stoutamire were entitled to a summary judgment as to the breach-of-contract claim because they were acting as agents of a disclosed principal — Bryant Bank. As to the negligent-misrepresentation claim, the defendants argued that they were entitled to a summary judgment in their favor because, they argued, 1) the opinion of value expressed in TKC’s appraisal report could not serve as the basis of a negligent-misrepresentation claim, 2) Bryant Bank had not relied upon the opinion of value contained in TKC’s appraisal report, and 3) the claim was barred by the statute of limitations. The defendants also argued that Bryant Bank’s negligent-misrepresentation claim would be “more appropriately characterized as a claim [of] promissory fraud” and, therefore, that *234 they were entitled to a summary judgment in their favor because Bryant Bank never alleged that the defendants intended to deceive Bryant Bank when they agreed to conduct the appraisal of the property in conformity with the Uniform Standards of Professional Appraisal Practice and then produced an appraisal that allegedly failed to conform to those standards.
On February 15, 2013, Bryant Bank filed a response to the defendants’ partial-summary-judgment motion. Bryant Bank argued that an appraisal of real estate can serve as the basis of a negligent-misrepresentation claim. In support of this argument, Bryant Bank quoted Zanaty Realty, Inc. v. Williams, 935 So.2d 1163, 1167 (Ala.2005):
“In Fisher v. Comer Plantation, Inc., 772 So.2d 455, 462 (Ala.2000), this Court held that ‘real-estate appraisers are subject to liability for negligent or wanton misrepresentation.’ However, the appraiser’s liability for negligence is limited to those parties to whom the real-estate appraiser owes a duty — that is, ‘ “specifically foreseen and limited groups of third parties for whose benefit and guidance the [appraiser] supplied the [appraisal] and who used it as the [appraiser] intended it to be used.” ’ Fisher, 772 So.2d at 462 (quoting Boykin v. Arthur Andersen & Co., 639 So.2d 504, 510 (Ala.1994)).”'
Bryant Bank argued that under Fisher v. Comer Plantation, Inc., 772 So.2d 455 (Ala.2000), and Zanaty Realty, TKC’s appraisal could serve as the basis of its negligent-misrepresentation claim because TKC conducted the appraisal for Bryant Bank and, therefore, owed a duty to Bryant Bank.
Bryant Bank also argued that it relied to its detriment on the appraisal when it issued the loan to WST, using the property as collateral. In support of this assertion, Bryant Bank attached the following portion of the deposition testimony of Peter Petroutson, a Bryant Bank representative:
“[Counsel for Bryant Bank:] There’s been some discussion along the way about loan-to-value and how that appraisal amount would have a bearing on the decision to make the loan. If the [TKC] appraisal had come in at a million dollars, would Bryant Bank have loaned the money? ■
“[Petroutson:] No.
“[Counsel for Bryant Bank:] So, in that regard, the appraisal has a role in the decision to approve a loan application; is that right?
“[Petroutson:] Of course.”
Bryant Bank also argued that the statute of limitations began to run when WST defaulted on the loan and caused Bryant Bank to incur a legal injury. In support of this argument, Bryant Bank quoted Chandiwala v. Pate Construction Co., 889 So.2d 540, 543 (Ala.2004): “A cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury.” Bryant Bank also argued that whether Ball and Stoutamire were liable for breach of contract is a question of fact within the purview of a jury.
On June 10, 2013, the circuit court granted the defendants’ partial-summary-judgment motion.[4] On September 17, 2013, the circuit court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Bryant Bank appealed.

*235
Standard of Review

“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.... ’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
“ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Capital Alliance Ins. Co. v. ThoroughClean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).

Discussion

Bryant Bank does not appeal the circuit court’s summary judgment in favor of Ball and Stoutamire on its breach-of-contract claim. Rather, Bryant Bank’s arguments on appeal relate solely to the summary judgment in favor of the defendants on Bryant Bank’s negligent-misrepresentation claim. The circuit court’s partial-summary-judgment order is not included in the record; accordingly, we do not know if the circuit court provided a specific basis for granting the motion.
Initially, we note that the defendants were not entitled to a summary judgment on Bryant Bank’s negligent-misrepresentation claim based on the statute of limitations. A negligent misrepresentation constitutes legal fraud. See § 6-5-101, Ala. Code 1975 (“Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.”). Therefore, negligent-misrepresentation claims are subject to a two-year statute of limitations, which begins running when the plaintiff discovers, or should have discovered, the fact constituting the fraud. See § 6-2-38(l) (“All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.”); § 6-2-3, Ala.Code 1975 (“In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.”). In Auto-Owners Insurance Co. v. Abston, 822 So.2d 1187, 1194-95 (Ala.2001), this Court set forth the standard for evaluating when a fraud claim accrues and, therefore, when the statutory limitations period commences:
*236 “In Foremost [ Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997) ], we reinstated important, historical principles regarding the law of fraud in Alabama, including the proper standard for evaluating when the statutory limitations period commences:
“ ‘Claims of fraudulent misrepresentation and suppression are subject to a two-year statute of limitations. Ala. Code 1975, § 6-2-38(l). Prior to Hickox v. Stover, 551 So.2d 259 (Ala.1989), and Hicks v. Globe Life & Accident Ins. Co., 584 So.2d 458 (Ala.1991), this Court had held that a fraud claim accrued, thus commencing the running of the statutory limitations period, when the plaintiff discovered the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care. Parsons Steel, Inc. v. Beasley, 522 So.2d 253 (Ala.1988); Moulder v. Chambers, 390 So.2d 1044 (Ala.1980); Jefferson County Truck Growers Ass’n v. Tanner, 341 So.2d 485 (Ala.1977).... -
[[Image here]]
“ ‘However, in Hicks, a plurality of this Court rejected the long-standing rule that our objective standard of reviewing the statute of limitations issue in fraud cases incorporated the duty to read a document upon its receipt or presentation; and it held that “[t]he question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually'knew of facts that would have put a reasonable person on notice of fraud.” 584 So.2d at 463. (Emphasis in Hicks.) Hicks was a natural and predictable extension of Hickox, which had been decided less than two years before. In Hickox, this Court, by a vote of five to three, adopted what has become known as the “justifiable reliance standard.” ...
[[Image here]]
“ ‘There has been a tension among the Justices on this Court ever since the 140-year-old standard for determining the reliance issue in fraud' cases was changed in Hickox ....
[[Image here]]
“ ‘After careful consideration, we conclude that the “justifiable reliance” standard adopted in Hickox, which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the “reasonable reliance” standard most closely associated with Torres v. State Farm Fire & Casualty Co., 438 So.2d 757 (Ala.1983)....
“‘For the foregoing reasons, we overrule Hickox, to the extent that it changed the law of fraud as it had existed prior thereto. Furthermore, we overrule Hicks, to the extent that it changed the standard that had previously existed for determining the statute of limitations issue in fraud cases. Because this return to the reasonable reliance standard represents a fundamental change in the law of fraud, we think it appropriate to make the new standard applicable in all fraud cases filed after the date of this decision, i.e., all cases filed after March 14,1997.’
“Foremost, 693 So.2d at 417-21.
“The changes in the law of fraud brought about by our decision in Foremost are not mere word games; rather, Foremost signifies a real, substantive difference in the standards to be applied to fraud cases filed after March 14,1997. For such cases ... § 6-2-3 does not *237 ‘save’ a plaintiffs fraud claim so that the statutory limitations period does not begin to run until that plaintiff has some sort of actual knowledge of fraud. Instead, under Foremost, the limitations period begins to run when the plaintiff was privy to facts which would ‘provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud. ’ Willcutt v. Union Oil Co., 432 So.2d 1217, 1219 (Ala.1983) (quoting Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 397, 281 So.2d 636 (1973)); see also Jefferson County Truck Growers Ass’n v. Tanner, 341 So.2d 485, 488 (Ala.1977) (‘Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.’).”
(Final emphasis added.)
The question of when a person of reasonable prudence would have discovered the alleged fraud is generally a question of fact within the purview of a jury. As this Court stated in Jim Walter Homes, Inc. v. Kendrick, 810 So.2d 645, 650 (Ala.2001):
“ ‘When a claim accrues, for statute-of-limitations purposes, is a question of law if the facts are undisputed and the evidence warrants but one conclusion. However, when a disputed issue of fact is raised, the determination of the date of accrual of a cause of action for statute-of-limitations purposes is a question of fact to be submitted to and decided by a jury.’
“Kindred v. Burlington Northern R.R., 742 So.2d 155, 157 (Ala.1999) (citations omitted).
“ ‘A fraud action is subject to a two-year statute of limitations. Ala.Code 1975, § 6-2-38. However, the fraud claim accrues only when the plaintiff discovers the fraud or when the plaintiff, acting as a reasonable person, should have discovered the fraud. Ala.Code 1975, §6-2-3.... “The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases in which the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud.” Hicks v. Globe Life & Accident Insurance Co., 584 So.2d 458, 463 (Ala.1991)(empha-sis in original).’
“Liberty Nat’l Life Ins. Co. v. McAllister, 675 So.2d 1292, 1297 (Ala.1995)(some citations omitted).”
In Jim Walter Homes, the plaintiff sued a builder alleging fraud on the part of the builder in failing to build a “quality home” — the kind of house the plaintiff alleges the builder promised would be his if he purchased a house from the builder. The plaintiff testified at trial that he knew for more than two years before commencing the lawsuit that the house he was sold was not a “quality home.” The jury returned a verdict in favor of the plaintiff; the defendant appealed. On appeal, this Court concluded that the plaintiffs fraud claim was barred by the statute of limitations as a matter of law because the plaintiff had actual knowledge that his house was not a “quality home” more than two years before he filed his action.
In the present case, Bryant Bank alleges TKC negligently misrepresented the value of the property in its appraisal report. Bryant Bank argues that its negligent-misrepresentation claim accrued when it incurred damage as a result of WST’s default on the loan. Bryant Bank *238 alleges that it was not until WST’s default that it began to investigate its mitigation options and became aware of the facts that led Bryant Bank to believe that TKC had negligently conducted the appraisal. The defendants argue that Bryant Bank’s negligent-misrepresentation claim accrued when it approved WST’s loan application in December 2007 and thereby relied on TKC’s appraisal to its detriment. Additionally, the defendants argue that, under the discovery rule set forth in § 6-2-3, a reasonable person would have investigated and discovered the alleged misrepresentation when Bryant Bank suspected TKC’s appraisal overstated the value of the property before issuing the loan to WST in December 2007 or, alternatively, in April 2008 when Bryant Bank reconsidered the value of the property in the process of deciding whether to extend WST’s line of credit.
No evidence was presented indicating that Bryant Bank had actual knowledge— for more than two years before commencing this action — that the appraisal was conducted in a negligent manner. Accordingly, Bryant Bank’s negligent-misrepresentation claim accrued when a reasonable person would have discovered the fraud — a question within the purview of the jury. Because a genuine issue of material fact exists as to when Bryant Bank discovered facts that would have caused a reasonable person to inquire and led to the discovery of the fraud giving rise to Bryant Bank’s negligent-misrepresentation claim, the defendants were not entitled to a summary judgment on the basis that the statute of limitations had run on its negligent-misrepresentation claim. Accordingly, we turn our analysis to the merits of Bryant Bank’s negligent-misrepresentation claim.
The elements of a misrepresentation claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 422 (Ala.1997)(citing § 6-5-101, Ala.Code 1975, and Harrington v. Johnson-Rast & Hays Co., 577 So.2d 437 (Ala.1991)). As set forth above, the defendants argued in their partial-summary-judgment motion that Bryant Bank did not satisfy the first and third elements of its negligent-misrepresentation claim; Bryant Bank argues on appeal that it presented substantial evidence of both of those elements.
First, Bryant Bank argues that under Fisher v. Comer Plantation, Inc., supra, a real-estate appraisal can serve as the basis of a negligent-misrepresentation claim. In Fisher, this Court held that a real-estate appraiser could be held liable for a negligently conducted appraisal under Restatement (Second) of Torts § 552 (1977), which it quoted, in pertinent part, as follows:
“ ‘(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by them justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
‘“(2) Except as stated in Subsection (3),[5] the liability stated in Subsection (1) is limited to loss suffered
“ ‘(a) by the person or one of a limited group of persons for whose bene *239 fit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
“ ‘(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.” ’
772 So.2d at 461. In Fisher, this Court held that its adoption of Restatement (Second) of Torts § 552 extended liability to a real-estate appraiser for a negligently conducted appraisal, as follows:
“The rule of § 552 may be applied to anyone who in the course of his ‘business, profession or employment’ engages in an activity that meets the requirements set forth in Subsection (1). Comment c to § 552 states that this rule ‘subjects to liability only such persons as make it a part of their business or profession to supply information for the guidance of others in their business transactions.’ Section 552 would clearly, by its terms, govern real-estate appraisers, who, as an integral part of their business, facilitate real-estate transactions by issuing opinions regarding the value of real property.[2]
[[Image here]]
772 So.2d at 462 (emphasis added).
The defendants argue that the value of the property contained in the appraisal is a statement of opinion — not a statement of fact — and, therefore, that it cannot serve as the basis of a negligent-misrepresentation claim. In support of their argument, the defendants cite Brushwitz v. Ezell, 757 So.2d 423, 432 (Ala.2000), which states the following in analyzing a suppression claim: “As with the misrepresentation claim, there arises with the suppression claim a question whether the statements in the appraisal were material, given that appraisals are considered statements of opinion, rather than statements of fact. Kaye v. Pawnee Constr. Co., 680 F.2d 1360, 1368 (11th Cir.1982).” (Emphasis added.) However, Kaye v. Pawnee Construction Co., 680 F.2d 1360 (11th Cir.1982), the case relied upon in Brushwitz, sets forth the following exception to the general rule stated in Brushwitz under which an opinion of value in an appraisal can serve as the basis of a misrepresentation claim:
“Alabama courts consider a statement of value to be an opinion and not a fact. See, e.g., Stevens v. Alabama State Land Co., 121 Ala. 450, 25 So. 995 (1899) (land); Lake v. Security Loan Association, 72 Ala. 207 (1882) (stock). Whether a given representation is an opinion or a fact ‘depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties.’ Fidelity & Casualty Co. v. J.D. Pittman Tractor Co., 244 Ala. 354, 358, 13 So.2d 669, 672 (1943). When parties deal at arm’s length and the recipient of a statement is not fraudulently induced to forbear inqui- *240 ríes that a competent person would make for his own protection, ‘expressions of opinion as to matters which lie in opinion merely — opinions as to current market values furnishing the most common example — ’ will not be grounds for a misrepresentation claim because the recipient, knowing the nature of such expressions, has no right to rely on them. Id. Even an opinion on value is actionable, however, if the recipient states his ignorance and invites the opinion, and the speaker understands the recipient relies on the speaker’s opinion as a fact so that the onus of a confidential relation results: if the recipient forbears independent inquiry because of an opinion elicited under these circumstances of confidence, Alabama courts will treat the statement as a fact reasonably relied upon. Id.”
680 F.2d at 1368 (emphasis added; footnote omitted). The exception stated in Kaye is consistent with a reading of Fisher that would make actionable a negligently conducted appraisal of value when the remaining elements of the claim are met. Such an interpretation is also consistent with Comment b. to Restatement (Second) of Torts § 552, which states, in pertinent part:
“The rule stated in this Section applies not only to information given as to the existence of facts but also to an opinion given upon facts equally well known to both the supplier and the recipient. Such an opinion is often given by one whose only knowledge of the facts is derived from the person who asks it.”
(Emphasis added.) We find persuasive the analysis of Comment b. by the United States Court of Appeals for the Fourth Circuit in Private Mortgage Investment Services, Inc. v. Hotel & Club Associates, Inc., 296 F.3d 308, 314-15 (4th Cir.2002):
“Notably for our purposes, Comment b. to Restatement (Second) of Torts § 552 provides that ‘[t]he rule stated in this Section applies not only to information given as to the existence of facts but also to an opinion given upon facts equally well known to both the supplier and the recipient.’ Restatement (Second) of Torts § 552, cmt. b. (1977) (emphasis added). To be sure, the alleged negligent misrepresentations in ML-Lee [.Acquisition Fund v. Deloitte & Touche, 327 S.C. 238, 489 S.E.2d 470, 471 n. 3 (1997),] did not involve expressions of opinion, but rather involved misstatements of fact. Accordingly, neither court had occasion to address Comment b. to Restatement (Second) of Torts § 552 in ML-Lee.
“Such circumstance, however, far from keeps us in the dark about how the South Carolina Supreme Court would rule if presented with the issue before us. First, common sense tells us that if the South Carolina Supreme Court was comfortable in adopting the Restatement (Second) of Torts § 552 with respect to the liability of a professional accounting firm to a third party in the context of a misrepresentation of fact negligently supplied for the guidance of others, the court, if presented with the opportunity, would not hesitate to adopt Comment b. to § 552 with respect to the liability of a professional real estate appraisal firm to a third party in the context of a negligent appraisal of a parcel of real property supplied for the guidance of others. After all, Comment b. is the drafters of the Restatement (Second) of Torts ’ considered explanation of when § 552 applies to a particular fact pattern. Moreover, as with accountants, the Restatement (Second) of Torts ’ approach represents the soundest method of determining the scope of a professional real estate appraiser’s *241 duty to third persons for negligent misrepresentation because it balances the need to hold professional real estate appraisers to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking.
“Next, dicta in another decision by the South Carolina Court of Appeals, namely AMA Management Corp. v. Strasburger, 309 S.C. 213, 420 S.E.2d 868 (S.C.Ct.App.1992), suggests that if faced with the facts of the present case, that court would adopt Comment b. to Restatement (Second) of Torts § 552. In AMA, the plaintiff, a sophisticated commercial entity, brought a negligent misrepresentation claim against another sophisticated commercial entity. AMA, 420 S.E.2d at 870. The plaintiff alleged that the defendant, via one of its contract negotiators, negligently misrepresented that certain loan guarantees that it was offering for purchase were ‘good.’ Id. at 875. Before disposing of the claim on the basis that the plaintiff had failed to prove that the alleged misrepresentation was false when made, and alternatively on the basis that the plaintiffs reliance on the alleged misrepresentation was not reasonable under the circumstances, id., the court stated in dicta that although a ‘mere statement of opinion, commendation of goods or services, or expression of confidence that a bargain will be satisfactory does not give rise to liability in tort, ... if the defendant has a pecuniary interest in making the statement and he possesses expertise or special knowledge that would ordinarily make it reasonable for another to rely on his judgment or ability to make carejul enquiry, the law places on him a duty of care with respect to representations made to plaintiff,’ id. at 874. This language is fully consistent with Comment b. to Restatement (Second) of Torts § 552.”
(Final emphasis added.) Accordingly, TKC’s opinion of the value of the property as stated in TKC’s appraisal report can serve as the basis of Bryant Bank’s negligent-misrepresentation claim.
Next, Bryant Bank argues that it presented substantial evidence that it relied upon TKC’s appraisal report in deciding to issue the loan to WST. As set forth above, Petroutson’s deposition testimony indicates that the opinion of value expressed in TKC’s appraisal report directly affected Bryant Bank’s decision to approve WST’s loan application. Therefore, Bryant Bank presented substantial evidence that it relied on TKC’s appraisal of the property.
For the reasons stated above, each of the arguments raised by the defendants in their partial-summary-judgment motion does not warrant the entry of a summary judgment in favor of the defendants on Bryant Bank’s negligent-misrepresentation claim. Therefore, the defendants’ partial-summary-judgment motion was due to be denied.

Conclusion

For the reasons stated above, we reverse the partial summary judgment as to Bryant Bank’s negligent-misrepresentation claim and we remand the case for further proceedings.
REVERSED AND REMANDED.
MOORE, C.J., and STUART, SHAW, and WISE, JJ., concur.

. The deposition testimony of Keith Watson, a Bryant Bank employee, indicates that TKC originally supplied an appraisal report that indicated the value of the property using only a cost-approach analysis. Watson’s deposition testimony also indicates that Bryant Bank requested that the value of the property be calculated using at least one additional method of valuation. The final appraisal report indicates that the $1,700,000 value is the average of a cost-approach value of $1,800,000 and a sales-comparison-approach value of $1,600,000.

. The loan actually consisted .of two loans: 1) a loan of $610,000 that was obtained to purchase a piece of real property for $540,000, to cover the closing costs associated with the purchase, and to refinance a $50,000 term loan from another bank and 2) a $400,000 line of credit to finance accounts receivables and inventory purchases. However, the loans were part of a single transaction; therefore, we refer to them as a single loan for the purposes of this appeal. Additionally, Bryant Bank extended WST’s line of credit in April 2008.

.Although the record does not contain the new appraisal, the deposition testimony of Peter Petroutson, a Bryant Bank representative, indicates that the new appraisal valued the property at $205,000.

. The record does not contain a copy of the circuit court's June 10, 2013, order granting the defendants’ motion.

. The exception in subsection (3) is not applicable here.

“2 Several cases decided by courts in other states have applied to appraisers an analysis involving negligent misrepresentation. Some of these cases are Tackling v. Shinerman, 42 Conn.Supp. 517, 630 A.2d 1381 (1993); Larsen v. United Fed. Sav. & Loan Ass’n of Des Moines, 300 N.W.2d 281 (Iowa 1981); Mattingly v. First Bank of Lincoln, 285 Mont. 209, 947 P.2d 66 (1997); Ballance v. Rinehart, 105 N.C.App. 203, 412 S.E.2d 106 (1992); First Fed. Sav. Bank v. Knauss, 296 S.C. 136, 370 S.E.2d 906 (Ct.App.1988); Behn v. Northeast Appraisal Co., 145 Vt. 101, 483 A.2d 604 (1984); and Schaaf v. Highfield, 127 Wash.2d 17, 896 P.2d 665 (1995).”